593 So.2d 457 (1992)
STATE of Louisiana, Appellee,
v.
Gregory Lynn SHRADER, Appellant.
No. 22943-KA.
Court of Appeal of Louisiana, Second Circuit.
January 22, 1992.
Larry Johnson, Shreveport and Robert A. Newcomb, Little Rock, Ark., for appellant.
William R. Jones, Coushatta, for appellee.
Before SEXTON, BROWN and STEWART, JJ.
STEWART, Judge.
Pursuant to a Crosby[1] plea, defendant pled guilty as charged to possession of marijuana with intent to distribute, in violation of LSA-R.S. 40:966A(1). Defendant was sentenced to ten years at hard labor and ordered to pay a $10,000 fine, plus court costs of $500 to the Judicial Expense Fund, along with $166 in regular court costs. In default of payment of the fine and court costs, the defendant was sentenced to an additional two years in the parish jail.
Defendant contends that the trial court erred in denying his motion to suppress the marijuana which formed the basis of his conviction. Defendant also assigned as error that the sentence imposed was excessive; *458 however, this assignment was neither briefed nor argued and is deemed abandoned.[2] For the reasons expressed, we affirm the conviction.

FACTS
Defendant, Gregory Lynn Shrader, age 33, was paroled from the Arkansas Department of Corrections on June 12, 1986. Shrader had been imprisoned for convictions of attempting to manufacture a controlled dangerous substance and four counts of theft by receiving. On April 7, 1988, Shrader was granted permission to reside in Louisiana and to be supervised by Louisiana parole authorities. Approximately a year after the defendant's parole was transferred to Louisiana, Mark Smith became his parole officer.
Smith initially became suspicious of Shrader in early 1989 when he reported his monthly income ranging between $1,700 to an excess of $3,000 a month. In May 1989, Shrader reported that he had established his own company, Topline Communications, and reported a monthly income of only $600. Smith never observed Shrader working but Shrader had made several trips out of the state to check on business, or contacts, or jobs. Shrader never reported that he worked. Shrader purchased a house, owned and operated two vehicles, and had various living expenses. Shrader's life style seemed inconsistent with his income.
In October or November 1989, Smith received information from Detective Larry Rhodes of the Red River Parish Sheriff's Department that Shrader might be involved in narcotics trafficking in Mississippi, however, Smith gave Shrader the benefit of the doubt and did not inquire into the allegation at that time.
In January 1990, Detective Rhodes again contacted Smith with information that Deputy Allums of the Red River Parish Sheriff's Department observed several gallon size plastic buckets around a mobile home which Shrader represented was his. Rhodes also advised Smith that Shrader told Deputy Allums that "if he was not a deputy, he could make some money by running drugs."
Also, Rhodes related to Smith another incident where Deputy Allums and Allums' son went to Shrader's home. Rhodes stated that Deputy Allums wanted to show his son the room where someone had committed suicide. Rhodes stated that Deputy Allums informed him that Shrader was very nervous and would not allow them to go into the room. After receiving this information, coupled with his own reasonable suspicion that Shrader was engaged in illegal drug activities, Smith decided to go to Shrader's home.
On January 26, 1990, Smith went to Shrader's home, along with three deputies from the Red River Sheriff's Department to confront Shrader and search his home. Smith and Rhodes observed several sacks of fertilizer in Shrader's carport.
Smith and Rhodes went to the back door and knocked. Shrader opened the door and asked them in. They walked through a utility room, through the kitchen and into the entrance of the living room where they saw a large growth light, the type commonly used to cultivate marijuana.
Shrader asked Smith "what are you all doing or what do you all want?" Smith responded that he had a reasonable suspicion that Shrader was involved in illegal narcotics and he had come to confront Shrader. Shrader allegedly responded, "well, I'm guilty." Smith asked Shrader if he would be willing to sign a consent to search and Shrader asked "would it make any difference?" Smith then responded, "no" and Shrader signed the consent to search.
Detective Rhodes told Shrader that it would be easier if he told them where the contraband was located. Shrader showed the deputies where the marijuana was located and was placed under arrest, handcuffed, and read his Miranda warnings. Rhodes asked Shrader if there was any *459 more marijuana in the house and Shrader indicated that there was some under the heating unit in the hall closet. The deputies continued to search while Shrader and Smith remained in the kitchen. Shrader was charged with possession of marijuana with intent to distribute.
Defendant plead not guilty and subsequently filed a motion to suppress the marijuana. After the trial court denied the motion to suppress, defendant reserved his right to appeal that ruling and plead guilty as charged. On appeal, defendant contends that the warrantless search of his residence violated his Fourth Amendment rights because the parole officer was acting as a "stalking horse" for the sheriff's office and because his consent was not voluntarily obtained. We disagree.

DISCUSSION
The sole issue in this case is whether the trial court erred by denying the defendant's motion to suppress the marijuana seized in a search of the defendant's house.
This court recently addressed a similar issue in State v. Epperson, 576 So.2d 96 (La.App. 2d Cir.1991) where the trial court held that the search of defendant's residence by a probation officer was conducted on the basis of reasonable suspicion that the defendant was in violation of conditions of his probation. The court noted that, while a probation officer's decision to search must be based on something more than a mere hunch, probable cause is not required, and only reasonable suspicion that criminal activity is occurring is necessary for a probation officer to conduct a warrantless search.
In State v. Malone, 403 So.2d 1234 (La.1981), the Supreme Court noted that probationers have essentially the same status as parolees. The Fourth Amendment prohibits only unreasonable searches, the test of reasonableness depends on the total atmosphere of each case. The court must consider (1) the scope of the particular intrusion, (2) the manner in which it was conducted, (3) the justification for initiating it, and (4) the place in which it was conducted.
An individual on probation or parole does not have the same freedom from governmental intrusion into his affairs as does the ordinary citizen. In the case at bar, the parole officer was not merely following a tip or hunch that defendant was engaged in criminal activity. Smith was doing his job of supervising defendant's parole and making sure he complied with the terms of parole. Smith was following established and permissible procedure when he was to visit defendant.
Smith testified that he enforced the Arkansas terms of parole that were admitted into evidence as S-1. Smith stated that a condition of Shrader's Arkansas parole was that he would not possess, sell, distribute or have under his control any narcotics.
Smith further testified that there existed an interstate compact which required Shrader to abide by the conditions of parole as set forth in LSA-R.S. 15:574.4(H) which provides in pertinent part:
(8) Live and remain at liberty and refrain from engaging in any type of criminal conduct;
. . . . .
(13) Will be subject to visits by his parole officer at his home or place of employment without prior notice.
Smith testified that although he did not know whether Shrader signed the Louisiana conditions of parole, it was normal office procedure for Shrader to sign pursuant to LSA-R.S. 15:574.14. The receiving state assumes the duties of visitation of and supervision over probationers or parolees of any sending state and in the exercise of those duties will be governed by the same standards that prevail for its own probationers and parolees. After review of the record, we find that in Exhibit S-1, Shrader signed the compact in which he agreed to comply with the conditions of parole as fixed by the states of Arkansas and Louisiana.
Smith's responsibilities and duties as a parole officer demanded that he assure Shrader's compliance with the terms of parole. *460 Factors present before Smith's unannounced visit to the defendant's home included the following:
1. the defendant had a previous drug-related conviction;
2. there was a discrepancy between the defendant's reported income and his life style;
3. the defendant was never observed working;
4. there were reports from area law enforcement that indicated that the defendant was involved in illegal activities.
These factors constituted more than a hunch and gave rise to a reasonable suspicion that Shrader was involved in illegal activity. These factors were corroborated by the large amount of fertilizer that was on Shrader's carport when Smith and the deputies arrived and the growth lamp inside Shrader's house. Smith's unannounced visit to Shrader's home was clearly within his duties as a probation officer. The search conducted was based on reasonable suspicion that Shrader had violated the conditions of his parole.
Although there was police involvement, as Smith explained, it was departmental policy to have assistance when a probation officer intended to search or to effect an arrest. We do not find it unreasonable that the probation officer sought assistance from the sheriff's department given the dangers attendant to such a confrontation. We do not consider this search a "stalking horse or a subterfuge" for criminal investigation. There is no evidence contradicting the parole officer's testimony that he initiated the visit and searched defendant's premises in order to ensure Shrader's compliance with the terms of his parole.
The search in the instant case offends neither the Fourth Amendment of the United States Constitution nor LSA-Const. Art. 1 § 5. For the foregoing reasons, the trial judge correctly ruled that the marijuana should not be suppressed.
In Shrader's second assignment of error, he contends that his consent to search his house was not truly voluntarily given.
Whether consent is voluntary is a fact question. The determination of the trial court on this issue must be given great weight on appeal. State v. Dunbar, 356 So.2d 956 (La.1978); State v. Temple, 343 So.2d 1024 (La.1977).
In the instant case, Shrader signed a consent to search. There is no evidence which indicates that Shrader was coerced, intimidated or promised any reward for signing the consent to search form.
The exchange between Smith and Shrader at the time Smith entered Shrader's house and all the circumstances leading to Shrader's written consent to search indicates that the consent was voluntarily given. This assignment is without merit.
AFFIRMED.
NOTES
[1] State v. Crosby, 338 So.2d 584 (La.1976).
[2] State v. Schwartz, 354 So.2d 1332 (La.1978); URCA Rule 2-12.4; State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir.1989).