809 So.2d 549 (2002)
STATE of Louisiana
v.
Harold E. GORDON, Jr.
No. 2001 KA 0236.
Court of Appeal of Louisiana, First Circuit.
February 15, 2002.
*550 Walter P. Reed, Covington, Dorothy Pendergast, Metairie, Counsel for Appellee State of Louisiana.
*551 Arthur Harris, New Orleans, Counsel for Defendant/Appellant Harold E. Gordon, Jr.
Before: FITZSIMMONS, DOWNING, and LANIER[1], JJ.
LANIER, J.
The defendant, Harold E. Gordon, Jr., was charged by grand jury indictment with first degree murder in violation of La. R.S. 14:30. The defendant pled not guilty. The indictment was amended later to charge the defendant with second degree murder in violation of La. R.S. 14:30.1. The defendant had a trial by jury and was found guilty as charged. The trial court denied the defendant's motions for a new trial and post-verdict judgment of acquittal. The defendant was sentenced to life imprisonment without the benefit of probation, parole or suspension of sentence. This appeal followed.

FACTS
On May 26, 1997, at approximately 8:30 p.m., Lieutenant Bob Donald responded to a shooting that occurred at 32nd and North Polk Streets in Covington, Louisiana. When Lt. Donald arrived on the scene, members of the Patrol Division were present and had secured the area. The officers began interviewing the witnesses to the shooting. Based on the information provided by the witnesses, the officers issued a BOLO (be on the lookout) for a purple, low-rider Mazda truck with a removable convertible top and an air spoiler across the tail end and began looking for the defendant.
During the trial, witnesses testified that on at least two occasions this Mazda truck passed by a Memorial Day party they were attending that evening. Katherine Bedford testified that when the truck initially passed by the party, two females were occupying the vehicle and they stopped and "asked about a boy" and then drove away. Shronda Clark stated the two females were looking for "Dunlap" (Lovell McDowell), the victim. She testified that the females drove away when she told them that "Dunlap" was right up the road. The truck returned to the location of the party and stopped in front of the house. The females were no longer in it. At that time, the truck was occupied by "Jo-Jo", the driver, Quincy (also known as Bookie), the front seat passenger, and the defendant, who rode in the bed of the truck.
The victim was standing next to the road in front of the house where the party was located when the truck drove up. According to the witnesses, the victim and the defendant were "having words" when the defendant pulled out a firearm. The defendant began shooting the gun and shot at least once in the air. After holding the gun up and shooting in the air, the defendant lowered the gun and the witnesses heard more shots. The victim received three gunshot wounds, including one fatal wound to the abdomen.
The police recovered two bullet casings from the scene of the shooting, one nine-millimeter cartridge case and one .380 cartridge case. The truck was located and seized within twenty-four hours of the shooting. The defendant later turned himself in at the Covington Police Department and was arrested. The police never found the weapon used in the shooting.

SUFFICIENCY OF THE EVIDENCE

(Assignments of Error Numbers One and Two)
The defendant asserts the verdict is contrary to the law and evidence and, thus, *552 the trial court erred in denying his motion for post-verdict judgment of acquittal. The defendant claims he fired two warning shots into the air before his gun jammed; and, thereafter, some unknown person or persons shot the victim. In the alternative, the defendant claims he acted in self-defense and the homicide was justifiable. The defendant also argues that one of the State's key witnesses, Shronda Clark, was inherently untrustworthy and provided unreliable testimony.
The standard for reviewing the sufficiency of the evidence supporting a conviction is whether or not, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See La.Code Crim. P. art. 821; Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Dixon, 432 So.2d 1025, 1026 (La.App. 1 Cir.1983). The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31, 38 (La.App. 1 Cir.1984). Moreover, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Richardson, 459 So.2d at 38. A determination of what weight to give evidence is a question of fact for the trier of fact and is not subject to appellate review. State v. Payne, 540 So.2d 520, 524 (La.App. 1 Cir.), writ denied, 546 So.2d 169 (La.1989). Pursuant to La. Const. of 1974, art. V, Sec. 10(B), "(I)n criminal cases ... [our] appellate jurisdiction extends only to questions of law." Determinations of the credibility of witnesses is a matter of the weight of the evidence and not its sufficiency. Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Because a determination of the weight of the evidence is a question of fact, this court has no appellate jurisdiction to review it in appeals of criminal cases. See State in the Interest of Cox, 461 So.2d 658 (La.App. 1 Cir.1984), writ denied, 464 So.2d 1375 (La.1985) for a discussion of what constitutes errors of fact and law in criminal, civil and juvenile cases.
When circumstantial evidence is used to prove the commission of the offense, such evidence must exclude every reasonable hypothesis of innocence. See La. R.S. 15:438. When a case involves circumstantial evidence and the trier of fact reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and a defendant may be found guilty unless there is another hypothesis that raises a reasonable doubt. State v. Moten, 510 So.2d 55, 61 (La.App. 1 Cir.), writ denied, 514 So.2d 126 (La.1987). Ultimately, all evidence, both direct and circumstantial, must be sufficient.
Where the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the state is required to negate any reasonable probability of misidentification. State v. Royal, 527 So.2d 1083, 1086 (La.App. 1 Cir.), writ denied, 533 So.2d 15 (La.1988). Positive identification by only one witness may be sufficient to support the defendant's conviction. State v. Williams, 458 So.2d 1315, 1326 (La.App. 1 Cir.1984), writ denied, 463 So.2d 1317 (La.1985).
La. R.S. 14:30.1, in pertinent part, reads as follows:
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; ...
Specific criminal intent is that state of mind which exists when the circumstances *553 indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Although intent is a question of fact, it does not have to be proven by direct evidence and may be inferred from the circumstances of the transaction. State v. Lewis, 525 So.2d 215, 217 (La.App. 1 Cir.), writ denied, 531 So.2d 469 (La. 1988).
The defendant first avers that the evidence indicates he fired two warning shots in the air, after which his gun jammed because of a .380 shell in the magazine. He asserts other unknown persons fired his gun after it jammed and some of those shots hit the victim.
The evidence shows the defendant arrived at the party where the victim was located and the two began "having words". The defendant stood in the bed of the truck. One witness, Katherine Bedford, testified that she heard the victim telling the defendant, "I don't have nothing man, I don't have nothing on me" (while pulling up his shirt). The defendant then pulled out his firearm and began firing up in the air. Another witness, Michael Keyes, testified that once the defendant shot in the air, the victim made such statements as, "(F)ight like a man," while moving and raising his arms up. Two people saw the defendant lower the gun and heard gunshots immediately thereafter. The victim stumbled across the street and fell to the ground near Katherine Bedford's truck. Once the people on the scene realized that "Dunlap" had been shot, they put him in Bedford's truck and took him to the hospital. The victim was pronounced dead shortly thereafter.
The defendant's argument that his gun jammed after shooting in the air is based on the fact that only two bullet casings were retrieved from the scene of the crime, one nine-millimeter cartridge case and one .380 cartridge case. Ballistics expert witness, Sergeant Otho Stubbs, testified that when you fire a .380 bullet in a nine-millimeter weapon it would expand in the chamber and cause it to have a bulge because its diameter is slightly smaller than that of a nine millimeter. Although the .380 bullet will fire, the casing of the bullet might fail to eject and remain in the chamber causing the next bullet to jam. The .380 casing would have to be manually cleared to allow the next bullet to fire if the gun was jammed. Sgt. Stubbs testified both of the casings recovered from the scene of the shooting were fired from the same weapon.
The defendant hypothesizes that once his gun jammed because of the .380 shell in the magazine, another unknown person shot "Dunlap". By his own hypothesis, the defendant admits that the two bullet casings recovered from the scene were fired from his weapon and his argument infers that he used a nine-millimeter firearm.
The testimony of the witnesses to the shooting does not support the defendant's theory that after he shot in the air another person began shooting. Each witness testified that after the defendant began firing his weapon, the reaction of the people remaining at the party was to flee the immediate vicinity of the truck and the victim. No other person was observed firing a weapon or in possession of a firearm except the defendant. On appeal, the reviewing court does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events. State v. Mitchell, 99-3342, p. 7 (La.10/17/00), 772 So.2d 78, 83. Rather, the court must evaluate the evidence in a light most favorable to the state and determine whether the alternative hypothesis is sufficiently reasonable that a rational juror could not have found *554 proof of guilt beyond a reasonable doubt. State v. Mitchell, 99-3342 at p. 7, 772 So.2d at 83. Based on the evidence of record, the defendant's unknown shooter hypothesis is not sufficiently reasonable to prevent a rational juror from finding proof of guilt beyond a reasonable doubt.
The second argument presented by the defendant is that he acted in self-defense. This argument admits that the defendant shot the victim but that he did so to lawfully defend himself. When the issue of self-defense is raised, the state has the burden of establishing beyond a reasonable doubt that a homicide was not committed in self-defense. State v. Lynch, 436 So.2d 567, 569 (La.1983). La. R.S. 14:20(1) provides, in pertinent part, as follows:
A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.
The self-defense issue on appeal is whether a rational fact finder, viewing the evidence in the light most favorable to the state, could have found beyond a reasonable doubt that the homicide was not committed in self-defense. State v. Matthews, 464 So.2d 298 (La.1985).
The defendant's claim of self-defense is not supported by the record. Each of the witnesses testified the victim was unarmed. There is no evidence in the record that the unarmed victim attacked or threatened the defendant's life or placed him in any danger of receiving great bodily harm. Dr. Frazier McKenzie testified that the victim sustained three distant gunshot wounds (greater than two feet) since no powder was deposited on his body. The witnesses testified that the victim stood on the gravel between the road where the truck was located and the yard of the home where the party was located and he did not attempt to enter the truck. Though the victim may have initially made a few steps towards the vehicle, he was not close enough to enter the vehicle. There also was an opportunity for the vehicle to drive away after the warning shot or shots were fired. However, as the witnesses testified, the defendant lowered the weapon and the shooting continued as the witnesses fled. The victim suffered three gunshot wounds, one to the upper right arm, one to the right abdomen (the fatal wound), and one grazing wound to his left arm. Viewing the evidence in the light most favorable to the state, the jury rationally could have found beyond a reasonable doubt that the homicide was not committed in self-defense.
The defendant's final argument is that one of the state's key witnesses, Shronda Clark, was inherently untrustworthy. The defendant avers that since Clark was on probation at the time of her testimony, she had a motive for testifying in a manner that would please the State. He further asserts that Clark was of suspect moral character because she had a conviction for illegal checks. The determination of what weight to give evidence is a question of fact. As previously indicated, pursuant to our constitution, an appellate court has no jurisdiction to review factual questions on appeal. In any event, the testimony of Shronda Clark was, as to all of the crucial factors of the case, consistent with that provided by the other witnesses. The defendant contends that Clark was the only witness who linked him to the crime. However, Michael Keyes also identified the defendant as the person that stood on the back of the low-rider truck and began firing a gun. The defendant's assertion that Clark was the only witness to link him with the crime is not accurate.
*555 These assignments of error are without merit.

PATENT ERROR
La.C.Cr.P. art. 920, entitled "Scope of appellate review", provides that "(T)he following matters and no others shall be considered on appeal: ... (2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." (Emphasis added.) La.C.Cr.P. art. 5, entitled "Mandatory and permissive language", provides, in pertinent part, that "(T)he word `shall' is mandatory...." (Emphasis added.) See also La. R.S. 1:3. This language is clear and unambiguous. Its application is not limited to errors favorable or unfavorable to either the State or a criminal defendant. All patent errors are within the scope of appellate review. La. C.C. art. 9 states the basic rule for the interpretation of laws and provides, in pertinent part, that "(W)hen a law is clear and unambiguous ... the law shall be applied as written...." La. R.S. 1:4 states that "(W)hen the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit." (Emphasis added.)
As mandated by Article 920, a patent error review has been made of the record on appeal and a patent sentencing error has been found.
The defendant was convicted of second degree murder in violation of La. R.S. 14:30.1. La. R.S. 14:30.1(B) provides that "(W)hoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence." (Emphasis added.) When the sentencing judge imposed the sentence, she did not state that the imprisonment was to be served at hard labor and/or that it would be served in the custody of the Department of Corrections. The court minutes do not provide that the imprisonment shall be at hard labor.
La. R.S. 15:565 provides, in pertinent part, that "(T)he sheriff, as soon as any sentence to imprisonment, without hard labor, ... shall have become final, shall proceed forthwith to the execution of said sentence." (Emphasis added.) La. R.S. 15:566(B) provides, in pertinent part, that "(T)he sheriff ... within thirty days of the date upon which sentence to imprisonment at hard labor has been imposed, shall deliver the prisoner to the state correctional institution designated by the Department of Corrections...." (Emphasis added.) See also La. C.Cr.P. art. 892.
The failure of the trial judge to provide that the sentence to imprisonment is to be served at hard labor is a patent sentencing error. If left uncorrected, the defendant will serve life imprisonment in the St. Tammany Parish Jail.
La.C.Cr.P. art. 882(A) provides that "(A)n illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review." (Emphasis added.) This language is clear and unambiguous and this "law shall be applied as written...." The legislature did not limit the application of this provision to sentencing errors favorable or unfavorable to either the State or a criminal defendant. Pursuant to this language, all sentencing errors are subject to correction, unless there is a legal reason not to make the correction.
In State v. Williams, XXXX-XXXX (La.11/28/01), 800 So.2d 790, this court found patent sentencing errors that were not covered by La. R.S. 15:301.1(A), vacated the sentence and remanded the matter to the trial court for re-sentencing. The Louisiana Supreme Court reviewed this case and held that this court "properly noticed the numerous sentencing errors" and affirmed our judgment. The court also stated that "... it is nonetheless well *556 established that a defendant in a criminal case does not have a constitutional or statutory right to an illegal sentence." (Emphasis added.) Williams, 800 So.2d 790. In Williams, XXXX-XXXX at pp. 9-10, 800 So.2d at 798, the court also stated that "(I)t is readily apparent that a significant distinction may be drawn between vindictiveness which, after appeal, increases a defendant's sentencing exposure or increases a legal sentence, and the pro forma correction of an illegal sentence. When an illegal sentence is corrected, even though the corrected sentence is more onerous, there is no violation of the defendant's constitutional rights. [Citations omitted.] Simply stated, when a court complies with a non-discretionary sentencing requirement, i.e., a mandatory minimum term or special parole provision(s), no due process violation is implicated because neither actual retaliation nor vindictiveness exists."
The sentencing error in this case is not one provided for in La. R.S. 15:301.1(A), and it pertains to a mandatory sentencing requirement. Accordingly, we will take the same action herein as we did in Williams.[2]

DECREE
For the foregoing reasons, the conviction is affirmed; the sentence is vacated and this matter is remanded to the trial court for re-sentencing in accordance with law and the views expressed herein.
CONVICTION AFFIRMED; SENTENCE VACATED AND REMANDED FOR RE-SENTENCING.
FITZSIMMONS, J., concurs and assigns reasons.
FITZSIMMONS, Judge, concurring, with reasons.
I respectfully concur. Although our appellate jurisdiction extends only to questions of law, a review for sufficiency of the evidence is deemed such a question. After a review of the evidence for sufficiency, I concur in the affirmance of the conviction. On the issue of the legality of the sentence, I also concur. In achieving its result in State v. Williams, XXXX-XXXX (La.11/28/01), 800 So.2d 790, the Louisiana Supreme Court inferentially vacated the jurisprudential rule that illegally lenient sentences cannot be modified by the appellate court, or remanded for re-sentencing, if the state failed to object. In the absence of the rule, the clear wording of the Code of Criminal Procedure article 882 allows the appellate court to recognize these errors. The sentence applicable to defendant under Louisiana law mandates "hard labor."
NOTES
[1] The Hon. Walter I. Lanier, Jr., Judge (retired), First Circuit Court of Appeals, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] La.C.Cr.P. art. 881.4A, entitled "Action by appellate court", provides that "(I)f the appellate court finds that a sentence must be set aside on any ground, the court shall remand for re-sentence by the trial court." (Emphasis added.) Official Revision Comment (a) for Article 882 states, in pertinent part, that "(T)he first sentence ... states the almost self-evident authority of the court to correct an illegal sentence is, in the contemplation of the law, no sentence at all." (Emphasis added.)