822 So.2d 764 (2002)
STATE of Louisiana
v.
Antoine WILLIAMS.
No. 2002 KA 0065.
Court of Appeal of Louisiana, First Circuit.
June 21, 2002.
*765 Jeff Johnson, Assistant District Attorney, Amite, Counsel for State of Louisiana.
Margaret Smith Sollars, Louisiana Appellate Project, Thibodaux, Counsel for Antoine Williams.
Before: GONZALES, KUHN, and CIACCIO,[1] JJ.
KUHN, J.
Defendant, Antoine Williams, was originally charged by bill of information with three counts of armed robbery, violations of La. R.S. 14:64. The State amended Count 2 of the bill of information to charge defendant with attempted armed robbery, a violation of La. R.S. 14:64 and 27, and added Count 4 to charge defendant with armed robbery. Defendant pled not guilty to all counts. Thereafter, the State severed count 2 and renumbered the counts, resulting in three counts of armed robbery. After a trial, the jury returned unanimous verdicts of guilty on each count. Defendant filed motions for post verdict judgment of acquittal and new trial, which were denied. The trial court sentenced defendant to 99 years at hard labor on each count, with each sentence to run consecutive to each other. Subsequently, the State filed a motion to correct illegally lenient sentences. The trial court granted this motion and re-sentenced defendant to 99 years at hard labor, without benefit of probation, parole, or suspension of sentence, on each count, to run consecutive with each other.
Defendant has appealed, alleging three assignments of error. For the reasons which follow, we affirm defendant's convictions and sentences imposed by the learned trial judge.

FACTS
This matter involves three armed robberies committed in Hammond, Louisiana. The first robbery (Count 3) occurred on August 7, 2000, when a Circle K cashier, Peggy Ridgel, was robbed. A black man walked into the store and asked for cigarettes. When Ms. Ridgel turned back around after retrieving the cigarettes, she saw defendant holding a gun on her. He demanded money and, after receiving cash in a bag, left. The victim called the police and described a medium-build man, about twenty-two years old, wearing a black T-shirt, *766 blue jean shorts and a blue bandanna. The robbery and the perpetrator were captured on tape, which was turned over to the Hammond Police Department. Later Ms. Ridgel was contacted by a Hammond Police Department detective who showed her a photographic lineup. Ms. Ridgel did not identify any picture as that of the perpetrator. But upon seeing a picture of a person whom authorities were looking for in a newspaper, Ms. Ridgel recognized the perpetrator and notified the investigating detective. Approximately four months after the robbery, the detective showed Ms. Ridgel another photographic lineup, and she identified defendant as the man who robbed her. Ms. Ridgel also identified defendant in court. At trial, Ms. Ridgel testified that she did not observe any tattoos on defendant the night of the robbery but explained that during those two minutes, she was more concerned with his face and clothes. She recalled that he was clean shaven and had short hair.
The second (Count 1) and third (Count 2) armed robberies occurred. About noon on September 2, 2000, a black male entered Helen's Health Foods and wanted to look at some products. The man was in the store about 15 minutes. When Will Whitaker, the clerk and owner's son, returned from retrieving a product, he saw the man holding a silver-looking gun. After taking money from the store and the victim's rings and wallet, defendant tied Mr. Whitaker's hands behind his back and his feet to his neck with cords. After defendant left, Mr. Whitaker was able to free himself and summon the police. Subsequently, Mr. Whitaker viewed a photographic lineup and identified defendant as the man who robbed him. Mr. Whitaker was able to clearly see defendant's face in the well-lit store. During the 10 to 15 minutes he observed defendant, Mr. Whitaker did not notice any tattoos, scars or marks on defendant's face or forearms. He recalled that defendant's hair was short.
On September 7, 2000, a black man entered M & M Wholesale and stated that he was interested in obtaining a pit bull puppy. The man wrote down a name and number and gave it to the clerk, Kelli Pinion. Later, around lunchtime, the man returned. He gathered different products and brought them to the desk to checkout. Ms. Pinion bent down to get a bag and, as she stood up, she saw defendant pointing a silver and black gun with a blue bandana tied around the handle at her. Ms. Pinion pleaded for her life and gave him money from the store and from her purse. The robber tied Ms. Pinion with a leash and a bungee cord to a pole in the warehouse section of the store. After he left, Ms. Pinion was able to free herself and call the police. She identified defendant's picture in a lineup as the perpetrator. Ms. Pinion described the perpetrator as a black male with short hair and a round face, weighing about 150 pounds and wearing a blue short-sleeved shirt, long shorts and blue shoes. She did not see any visible scars, marks or tattoos. Ms. Pinion observed defendant for about 45 to 50 minutes during his two visits to the store.

SUFFICIENCY OF THE EVIDENCE
In assignment of error number one, defendant contends the verdicts were contrary to the law and evidence. He specifically argues there was insufficient evidence to prove his identity as the perpetrator. He contends the eyewitnesses' identifications were unreliable because each eyewitness failed to see or mention tattoos on his face and arms.
The State argues the uncontradicted identification by the witness in each robbery *767 was sufficient to negate any reasonable probability of misidentification.
The standard of review for the sufficiency of evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime and the defendant's identity beyond a reasonable doubt. See La.C.Cr.P. art. 821; Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Where the key issue is the defendant's identity as the perpetrator, rather than whether or not the crime was committed, the State is required to negate any reasonable probability of misidentification. Positive identification by only one witness may be sufficient to support a defendant's conviction. State v. Coates, XXXX-XXXX, p. 4 (La.App. 1st Cir.12/22/00), 774 So.2d 1223, 1225.
During the trial, the victims of the three armed robberies each identified defendant as the man who robbed him or her at gunpoint. Each of these three victims also viewed an out-of-court photographic lineup and identified defendant as the armed robber.
Officer Kevin Grob, who responded to the call at the Circle K armed robbery, stated that Ms. Ridgel gave a description of the suspect, which was similar to her trial testimony. The fingerprints obtained from the scene were inconclusive, as there were insufficient points of identification to sufficiently connect the prints to anyone.
The two other robberies were investigated by Hammond Police Department Detective Brian McCormick. He developed leads and he compiled a photo lineup containing defendant's picture. Neither hesitated in identifying defendant as the robber.
Mr. James Dupry, qualified as an expert in handwriting analysis and document examination, compared defendant's handwriting sample to the written name and number that the perpetrator left with Ms. Pinion. The comparison was inconclusive, but Mr. Dupry noted that many areas of defendant's handwriting exemplar had traceovers and writeovers, which are characteristics of a disguised handwriting.
At trial, defendant contended that he had visible tattoos under his eye and on his forearm prior to the dates of the robberies and that because none of the victims mentioned these tattoos in their descriptions of the perpetrator, they misidentified him as the perpetrator. Defendant presented the testimony of two witnesses, Johnny Brumfield, Sr. and his son, Johnny Brumfield, Jr., that defendant had tattoos on his eye (a teardrop) and arm (old English letters) prior to the date of the first robbery. The senior Mr. Brumfield stated he last observed the tattoo on defendant's arm sometime between July 7 and July 20, 2000.
The State called Officer Wayne Scivicque as a rebuttal witness. He booked defendant into the jail on November 3, 2000, and a photo was taken at that time. During the booking Officer Scivicque asked defendant about scars and tattoos, but defendant did not indicate that he had any tattoos. The officer further testified that the booking photographs do not show any tattoos on defendant.
During the trial, defendant displayed the tattoos on his arm and face to the jury. However, the record before us does not contain any pictures of defendant's tattoos shown to the jury. Nor does any of the testimony describe the size or color of the tattoos or State whether they were created professionally or homemade. It is not clear to us whether defendant remained incarcerated from the date of his arrest *768 until trial, thus prohibiting him from having the tattoos professionally created. Nevertheless, since defendant was not arrested until at least two months after the robberies and he voluntarily turned himself in to the police, he did have the opportunity to have the tattoos created after the robberies.
In addition to the victims' identifications, the State introduced evidence of similarities in the three crimes; the perpetrator in two of the instances either wore or possessed a blue bandana and used the similar-looking weapon. Each victim worked in a store and two were tied up before the perpetrator left the scene.
After considering the credibility of the witnesses and weighing the evidence, the jury accepted the testimony of the victims and their identification of defendant as the perpetrator. As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. On appeal, this court will not assess the credibility of witnesses or reweigh the evidence to overturn a jury's determination of guilt. State v. Coates, XXXX-XXXX at pp. 4-5, 774 So.2d at 1225-26.
We conclude that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have concluded that the State proved beyond a reasonable doubt that defendant was the perpetrator in each of the three robberies.
This assignment of error lacks merit.

NOTE-TAKING BY THE JURY
In assignment of error number two, defendant contends that he was denied due process when the trial judge allowed the jurors to take notes and failed to declare a mistrial after objection. Defendant further argues that the trial court's error in allowing the jury to take notes cannot be deemed harmless error.
The State argues that defendant initially failed to object to the court's instruction allowing the jury to take notes and, thus, waived the objection. It further argues that after defendant's objection, the trial judge reversed its ruling on the note-taking. The State argues that the denial of the motion for mistrial was not erroneous and, the error, if any, was harmless.
On the morning of the second day of trial, defense counsel made a motion for mistrial based upon the trial court's erroneous instruction the day before to the jurors that they could take notes during the trial. Defendant argued that the procedure being used was outside the scope of La.C.Cr.P. art. 793 and prejudicial and asked that the court rescind its instruction and remove the notes from the jurors. The court asked defendant to explain the prejudice, which resulted from the note-taking. Defendant responded that the taking of notes distracted the jurors and prevented them from being able to observe the demeanor of the witnesses in determining credibility.
The trial judge, in denying the motion for mistrial, stated that any attempt by the legislature in La.C.Cr.P. art 793 to limit the authority of a district court to tell jurors whether or not they can or cannot take notes was blatantly unconstitutional on its face. The judge further stated that he was aware of the strong tradition of the courts in following the Code of Criminal Procedure and that he had not specifically complied with the statute requiring consent of both counsel; therefore, he reversed his previous ruling, removed and destroyed the notes and instructed the *769 jurors that they would not be allowed to take notes. The judge further stated that the defendant had not made any showing of prejudice, that no error had occurred, and, if an error had occurred, it was harmless. The judge further declared that La. C.Cr.P. art. 793 is procedural and retroactive.
Louisiana Code of Criminal Procedure article 793 was amended, by 2001 La. Acts No. 465, § 1, effective August 15, 2001, to provide for the taking of notes by a juror when there is agreement between the defendant and the State. Prior to the 2001 amendment and at the time of the trial in the instant proceeding, art. 793 prohibited the taking of notes by jurors.
A review of jurisprudence prior to the amendment of La.C.Cr.P. art. 793 reveals that the taking of and use of notes by jurors was not per se prejudicial to the substantial rights of the accused nor a substantial violation of a constitutional or statutory right constituting reversible error. In State v. Groves, 311 So.2d 230 (La.1975), overruled on other grounds State v. Lee, 331 So.2d 455 (La.1975), the judge noted during the trial that one of the jurors appeared to be taking notes. The juror admitted he had in fact been doing so, but did not understand that note-taking was impermissible. He was then advised by the judge not to take notes and to rely on his memory. The notes were destroyed by the bailiff. Defense counsel moved for a mistrial which the judge denied, ruling there was no prejudice to the accused.
The Louisiana Supreme Court in Groves stated:
Although Article 793 of the Code of Criminal Procedure requires that a juror must rely upon his memory in reaching a verdict and ordains that he `shall not be permitted to refer to notes or to have access to any written evidence,' it is the view of this Court that under these circumstances the error is harmless and does not constitute a substantial violation of a statutory right. [La. C.Cr.P.] art. 921.
In State v. Ledet, 298 So.2d 761 [, 764] (La.1974), the purpose of the rule is stated in these terms:
`The essential reason for the prohibition is that a note-taker may unduly influence the jury by reference to the notes and that, if the notes are inaccurate and incomplete, the parties before the court may be prejudiced by the jurymen's acceptance of them in preference to actual testimony heard by them and their individual memory, if any, of it.'
State v. Groves, 311 So.2d at 239.
The Ledet court, in the absence of connivance by the State, was unwilling to hold that the use of notes by a juror is, per se, prejudicial to the substantial rights of the accused, or constituted a substantial violation of a constitutional or statutory right constituting reversible error.
In this case, we are not faced with a situation where the State encouraged an open violation, or an instance where the trial court refused, after defendant's objection, to prohibit compliance with the legislative mandate forbidding the taking of notes by jurors. Furthermore, defendant did not show that any actual prejudice occurred. See State v. Ledet, 298 So.2d at 764. See also State v. Colbert, 615 So.2d 32, 35 (La.App. 3d Cir.1993) (the trial court's failure to grant a mistrial when it was discovered that a juror referred to his own personal notes during deliberations was not reversible error; the defendant had not shown or alleged any prejudice as a result of the juror's reference to his notes). We find no prejudice or violation of any fundamental right of defendant.
This assignment of error lacks merit.

*770 CUMULATIVE ERRORS
In assignment of error number three, defendant argues that the trial court erroneously denied defendant's motion for new trial based upon several errors: the trial court's denial of the motion to suppress the photographic lineups, the failure to sever the offenses, the failure to give Prieur notice of other crimes, and the State's use of peremptory challenges to exclude members of a minority race. Specifically, he argues that "while none of these events seemingly merit separate arguments, they nevertheless indicate a bias of the State" and that these errors with the others specifically assigned and briefed violated his due process rights.
The State argues that in reviewing a motion for new trial, only the weight of the evidence can be considered. The State further notes that defendant concedes that none of the grounds, separately argued, have merit; rather, he contends that the cumulative effect reveals a bias for the State.
Initially, we note that defendant's written motion for new trial provides only two grounds: the verdict is contrary to the law and evidence and the ends of justice will be served by the granting of a new trial. At the hearing on the motion, defense counsel argued that the evidence was insufficient to convict and did not elaborate on the grounds pertaining to "the ends of justice."
In the first assignment of error, we found sufficient evidence to support each conviction. Furthermore, we note that the grounds now argued in brief were not raised below. In any event, La. C.Cr.P. art. 851(5) allows the trial court to grant a new trial if "the ends of justice would be served ... although the defendant may not be entitled to a new trial as a matter of strict legal right." Therefore, even assuming, arguendo, that the grounds now raised on appeal were included under "the ends of justice" portion of the motion for new trial, the grant or denial of a new trial based on article 851(5) is not subject to appellate review. State v. Walder, 504 So.2d 991, 994 (La.App. 1st Cir.), writ denied, 506 So.2d 1223 (La. 1987). Moreover, defendant concedes in brief that these grounds, considered individually, lack merit. For all these reasons, we reject defendant's cumulation of errors argument herein.
This assignment is without merit.

CONCLUSION
Accordingly, for the reasons set forth, we affirm the conviction and sentence of defendant, Antoine Williams.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] The Honorable Philip C. Ciaccio, Judge (retired), Fourth Circuit Court of Appeal, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.