845 So.2d 383 (2003)
STATE of Louisiana
v.
Eric Peter HAMILTON.
No. 2002 KA 1344.
Court of Appeal of Louisiana, First Circuit.
February 14, 2003.
*385 Walter P. Reed, Covington, Dorothy A. Pendergast, Metairie, for Plaintiff/Appellee, State of Louisiana.
John W. Lindner, II, Covington, for Defendant/Appellant, Eric Peter Hamilton.
*386 Before: CARTER, C.J., WHIPPLE and CIACCIO,[1] JJ.
CARTER, C.J.
The defendant, Eric P. Hamilton, was originally charged by bill of information with possession of cocaine, a violation of LSA-R.S. 40:967 C. He entered a plea of not guilty. The state later amended the charge to possession of cocaine with intent to distribute, a violation of LSA-R.S. 40:967 A, and the defendant entered a plea of not guilty to the amended charge. The defendant filed motions to suppress the evidence and confession, and the trial court denied both motions. After a trial by jury, the defendant was found guilty as charged. Upon the denial of the defendant's motion for a new trial, the defendant waived sentencing delays and the trial court imposed a sentence of nine years imprisonment at hard labor, the first five years to be served without the benefit of probation or suspension of sentence. The defendant was then adjudicated a multiple offender under the provisions of LSA-R.S. 15:529.1. The trial court vacated the previously imposed sentence and sentenced the defendant to fifteen years imprisonment at hard labor, the first five years to be served without the benefit of probation or suspension of sentence.[2] The defendant now appeals urging that the trial court erred in denying the motion to suppress the evidence and the motion for a mistrial and that the verdict is not supported by sufficient evidence. For the following reasons, we affirm.

FACTS
On June 3, 2001, Agents Mike Phelps and Doyle Roberts of the Louisiana Department of Public Safety and Corrections, The Division of Probation and Parole, received a tip from an anonymous female informant concerning drug activity of the defendant. The informant stated that the defendant was selling cocaine and that there was cocaine located at the defendant's residence. The informant specifically provided that drugs could be found in a hidden compartment of a dresser located in the defendant's bedroom.
Detective Nick Mistretta of the Slidell Police Department received a similar phone tip on June 4th, also from an anonymous female informant, and he contacted Agent Phelps. Agent Phelps informed Detective Mistretta that he would be performing a residence check at the defendant's home and asked the officer to assist him. Later that day, Agent Phelps and Detective Mistretta went to the defendant's home along with Agent Roberts, the defendant's parole officer, Sergeant Kevin Swann, and Detective John Hover.
When the officers arrived at the defendant's home, he was not there. Agent Roberts and Sergeant Swann went to the defendant's place of employment to look for him while Agent Phelps, Detective Hover and Detective Mistretta waited at the defendant's residence. The defendant arrived at his home with his wife just before Agent Roberts and Sergeant Swann returned to the house. The parole officers and detectives entered the home and began the search in the master bedroom. Two small bags of a substance suspected to be cocaine were located in a hidden compartment of a small dresser drawer along with a set of pinky scales, a razor *387 blade, an exacto knife, and men's jewelry. Detective Mistretta also located a large bag of suspected cocaine inside of a knit cap in a separate dresser drawer. Sergeant Swann advised the defendant of his Miranda rights and placed him under arrest. The defendant was ultimately convicted of possession of cocaine with intent to distribute.

ASSIGNMENT OF ERROR NUMBER ONE
In the first assignment of error, the defendant argues that the trial court erred in denying his motion to suppress the evidence. He specifically avers that the warrantless search of his residence was a mere subterfuge for police investigation. He submits that although he was a parolee at the time of the search, the search was instigated by police officers of the Slidell Police Department, Division of Narcotics, without the requisite probable cause.
A parolee has a reduced expectation of privacy, subjecting him to reasonable warrantless searches of his person and residence by his parole officer. See State v. Malone, 403 So.2d 1234, 1238 (La. 1981). The reduced expectation of privacy is a result of the parolee's conviction and agreement to report to a parole officer and to allow that officer to investigate his activities in order to confirm compliance with the provisions of his parole. State v. Vailes, 564 So.2d 778, 780-781 (La.App. 2d Cir.1990). A parole officer's powers, however, are not without some restraints. A parole officer may not use his authority as a subterfuge to help another police agency that desires to conduct a search but lacks the necessary probable cause. The parole officer must believe that the search is necessary in the performance of his duties and reasonable in light of the total circumstances. In determining the reasonableness of a warrantless search of a parolee and his residence, the court must consider: (1) the scope of the particular intrusion; (2) the manner in which the search was conducted; (3) the justification for initiating the search; and (4) the place it was conducted. State v. Vailes, 564 So.2d at 781.
In State v. Vailes, the probation officer had received information from a narcotic officer and a confidential informant that the defendant was possibly selling drugs out of, and keeping weapons in, his home. A search of the home revealed a shotgun in plain view in a bedroom and a rifle and other spare weapons parts on a table in a garage. The court concluded that this warrantless search was a reasonable exercise of the probation officer's authority. State v. Vailes, 564 So.2d at 781.
It is an appropriate function of a parole officer to conduct unannounced, random checks on parolees. A parolee agrees to submit to such unannounced visits from his parole officer as a condition of parole. State v. Wesley, 28,941, p. 8 (La. App.2d Cir.12/13/96), 685 So.2d 1169, 1174, writ denied, 97-0279 (La.10/10/97), 703 So.2d 603. While the decision to search must be based on something more than a mere hunch, probable cause is not required, and only a reasonable suspicion that criminal activity is occurring is necessary for a probation officer to conduct the warrantless search. State v. Epperson, 576 So.2d 96, 99 (La.App. 2d Cir.), writ denied, 580 So.2d 920 (La.1991).
In State v. Shields, 614 So.2d 1279, 1284 (La.App. 2d Cir.), writ denied, 620 So.2d 874 (La.1993), the Second Circuit Court of Appeal found that the search for a probation violation was not a subterfuge for a criminal investigation where there was no ongoing investigation of the defendant at the time an informant reported a possible probation violation. It was also noted that the search of the residence was *388 conducted by probation officers only. Likewise, in State v. Wesley, 685 So.2d at 1175, the court concluded that the search of the parolee's residence was not a subterfuge for a police investigation when the parole officers testified that they often conducted routine visits or checks on parolees and that they called the sheriff's office for back-up only when they encountered suspected criminal activity.
In the instant case, according to their testimony, Probation and Parole Agents Roberts and Phelps both received a tip concerning drug activity by the defendant.[3] At the time, the defendant was on parole for a previous conviction for possession of drugs and Agent Roberts was his parole officer. Detective Mistretta received the tip on the following day. The informant stated that she was the defendant's sister-in-law. Although it is uncertain as to whether the parole officers and the detective received the tips from the same female informant, each person was informed that the defendant was selling illegal narcotics and that there was a substantial amount of cocaine at the defendant's residence. The testimony presented at the motion to suppress hearing specifically provided that when Detective Mistretta contacted Agent Phelps, Agent Phelps said that he and Agent Roberts would be performing a residence check of the defendant's home for a possible parole violation in response to the tip. Agent Phelps requested that Detective Mistretta provide assistance along with any other available officers. Agent Roberts explained the request for assistance as follows:
[A] lot of times we request the police to help us, and that has a lot of advantages for us as far as they havelike we don't have police radios and so forth. So we do it a lot of times as a safety consideration or, you know, it's back up. They help us out and if we can get them to go with us, then it's a good thing for us.
The jurisprudence allows police officers to accompany parole officers in surprise searches. See State v. Odom, 34,054, pp. 6-7 (La.App.2d Cir.11/1/00), 772 So.2d 281, 287; State v. Shields, 614 So.2d at 1282-1284, and, most recently, U.S. v. Knights, 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001). In State v. Shrader, 593 So.2d 457 (La.App. 2d Cir.), writ. denied, 598 So.2d 353 (La.1992), the Second Circuit found that a warrantless search conducted by a parole officer was not a subterfuge for a criminal investigation. The court reasoned that the search conducted was based on reasonable suspicion that the defendant had violated the conditions of his parole. The court stated as follows:
Although there was police involvement, as Smith explained, it was departmental policy to have assistance when a probation officer intended to search or to effect an arrest. We do not find it unreasonable that the probation officer sought assistance from the sheriff's department given the dangers attendant to such a confrontation. We do not consider this search a `stalking horse or a subterfuge' for criminal investigation. There is no evidence contradicting the parole officer's testimony that he initiated the visit and searched defendant's *389 premises in order to ensure Shrader's compliance with the terms of his parole.
State v. Shrader, 593 So.2d at 460.
When reviewing a trial court's ruling on a motion to suppress based upon findings of fact, great weight is placed upon its determination, because the trial court had the opportunity to observe the witnesses and weigh the relative credibility of their testimony. State v. Carr, 530 So.2d 579, 589 (La.App. 1st Cir.), writ denied, 533 So.2d 354 (La.1988), cert. denied, 489 U.S. 1098, 109 S.Ct. 1573, 103 L.Ed.2d 939 (1989). The search in the instant case offends neither the Fourth Amendment of the United States Constitution nor LSA-Const. art. 1, § 5. As the defendant's parole officer, Agent Roberts was aware of the defendant's previous conviction for a drug violation and the information provided in the tip consisted of the same type of behavior. When considered alone, the fact that the parole officers and a police officer all received the same information may not have been sufficient to form probable cause, but it certainly aroused a reasonable suspicion that the parolee might be in violation of his parole.
Applying the factors provided in State v. Vailes, the scope of the search conducted by the agents and officers was not unreasonable under the circumstances. When the defendant arrived home, the agents and officers informed him of the reason for the residence check and the defendant allowed them to enter the home. Before discovering the substance suspected to be cocaine, Agent Phelps limited the search to the master bedroom in accordance with the information received in the tip. Agent Roberts and Sergeant Swann remained in the front of the home with the defendant. The defendant was handcuffed as a precautionary measure. Detective Mistretta and Detective Hover assisted Agent Phelps with the search of the bedroom. Detective Hover located the hidden compartment in the dresser of drawers. Agent Phelps opened the compartment and discovered the substance later determined to be cocaine. As previously discussed, the parole officers' justification for initiating the search arose from their reasonable suspicion that the defendant was in violation of his parole. This reasonable suspicion was based on information received in a tip from a female informant who told the officers where drugs could be specifically located in the defendant's home.
We do not find the search to be a subterfuge for a police investigation. According to the testimony of Agents Roberts and Phelps, the parole officers planned to perform the residence check based on the information received in the tip before they had any contact with the detectives. When Detective Mistretta contacted Agent Phelps, Agent Phelps told him that they would be performing the residence check and requested his assistance. There was no ongoing investigation of the defendant at the time of the search. All of the detectives' testimony indicated that they were present in order to assist the parole officers. We find the parole officers' request for police assistance to be reasonable under the circumstances.
We find no abuse of discretion by the trial court. The trial court was correct in denying the motion to suppress. This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
In the second assignment of error, the defendant avers that the trial court erred in denying his motion for mistrial. He claims that the state's constant references to the defendant's parole officer improperly introduced evidence of the defendant's other crimes. He further submits *390 that the parole officer could have been referred to as a law enforcement officer and that allowing the references to a parole officer caused undue prejudice.
Mistrial is a drastic remedy which should be declared only when unnecessary prejudice results to the accused. State v. Livas, XXXX-XXXX, p. 9 (La.App. 1st Cir.1/17/01), 808 So.2d 415, 422. The determination of whether prejudice has resulted lies in the sound discretion of the trial judge. See State v. Sanders, 93-0001, p. 21 (La.11/30/94), 648 So.2d 1272, 1288-89, cert. denied, 517 U.S. 1246, 116 S.Ct. 2504, 135 L.Ed.2d 194 (1996). LSA-C.Cr.P. art. 770(2) prohibits reference by a judge, a district attorney, or a court official to other crimes by the defendant as to which evidence is not admissible under penalty of mandatory mistrial. LSA-C.Cr.P. art. 771 provides:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
During the cross-examination of Sergeant Swann, the defense counsel questioned him concerning the detention or "arrest" of the defendant during the time of the search. During the sergeant's partial answer, he revealed that the defendant had a probation officer.[4] The defense counsel objected to the answer as non-responsive. The trial court stated that the objection was premature and requested that the detective provide his full answer to the question at the bench. The defense objected stating that the jury had already been informed of the defendant's criminal history by the detective stating, "his probation officer," and the defense requested a mistrial at that point. The trial judge retired the jury from the courtroom and allowed the detective to finish his answer to the question outside the presence of the jury. The detective's answer provided that the defendant was detained by the Department of Probation and Parole when they entered his home. He explained that it was common for that department to detain parolees and probationers and that no member of the police department handcuffed the defendant. He further explained that the members of the police department were present to provide police assistance to the Department of Probation and Parole. In ruling the trial court stated as follows:
Thank you. As to the objection, I overrule the objection based on the fact that, number one, it was premature. I think the answer was, in fact, responsive and that it is not objectionable in the *391 sense that it does not refer to another crime merely by the reference to the probation officer. And you have an objection for the record based on that ruling.
The trial court later denied the motion for mistrial also. We find that the trial court did not abuse its discretion in denying the defendant's motion for mistrial. The initial reference that led to the defense motion for mistrial was not elicited by the state, but was given on cross-examination in response to a question by defense counsel. There is no suggestion or indication that the remark was made in order to prejudice the defendant; rather, the witness made the statement by way of explaining the detention of the defendant in direct response to the question asked by the defense counsel. The defense counsel did not request an admonition and the trial court was not mandated to grant a mistrial since the remark was not made by the judge, district attorney, or a court official. Furthermore, the defendant testified at trial and exposed the existence and nature of his criminal history to the jury. Thus, the defendant did not suffer any further prejudicial effect by the references to his parole officer during trial. This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER THREE
In his final assignment of error, the defendant avers that the verdict was not supported by sufficient evidence. The defendant specifically avers that the state failed to exclude, as a hypothesis of innocence, the possibility that the drugs belonged to defense witness Joey Sanchez. He submits that no evidence was offered to impeach the testimony of Sanchez providing that the drugs belonged to him and not the defendant.
In reviewing the sufficiency of the evidence to support a conviction, an appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Further, when the conviction is based on circumstantial evidence, LSA-R.S. 15:438 provides that such evidence must exclude every reasonable hypothesis of innocence. State v. Gordon, XXXX-XXXX, p. 4 (La.App. 1st Cir.2/15/02), 809 So.2d 549, 552. When a case involves circumstantial evidence and the trier of fact reasonably rejects a hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. State v. Gordon, 809 So.2d at 552.
Louisiana Revised Statute 15:438 does not establish a stricter standard of review than Jackson v. Virginia, it is merely an evidentiary guide for the jury when considering circumstantial evidence. See State v. Porretto, 468 So.2d 1142, 1146 (La.1985). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817, 820 (La.1987). The fact finder's discretion should be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. See State v. Bright, 98-0398, p. 23 (La.App. 1st Cir.4/11/00), 776 So.2d 1134, 1147. A reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. State v. Mercantel, XXXX-XXXX, p. 9 (La.4/3/02), 815 So.2d 50, 56.
The crime of possession with intent to distribute cocaine is defined as *392 follows: "it shall be unlawful for any person knowingly or intentionally ... [t]o... possess with intent to ... distribute... a controlled dangerous substance ... classified in Schedule II." LSA-R.S. 40:967 A(1). Thus, in order to support a conviction, the state must prove beyond a reasonable doubt that the defendant possessed the drug with the intent to distribute it. One need not physically possess the controlled dangerous substance to violate the prohibition against possession; constructive possession is sufficient. State v. Gordon, 93-1922, p. 9 (La.App. 1st Cir.11/10/94), 646 So.2d 995, 1002. A person may be in constructive possession of a controlled dangerous substance if it is subject to his dominion and control, regardless of whether or not it is in his physical possession. The mere presence in the area where narcotics are discovered or mere association with the person who does control the drug or the area where it is located is insufficient to support a finding of possession. However, a person may be in joint possession of a drug if he willfully and knowingly shares with another the right to control the drug. State v. Gordon, 646 So.2d at 1002.
A determination of whether or not there is "possession" sufficient to convict depends on the peculiar facts of each case. State v. Gordon, 646 So.2d at 1002. Several factors may be considered in determining whether or not a defendant exercised "dominion and control" over a drug, including: a defendant's knowledge that illegal drugs are in the area; the defendant's relationship with the person found to be in actual possession; the defendant's access to the area where the drugs were found; evidence of recent drug use by the defendant; the defendant's physical proximity to the drugs; and any evidence that the particular area was frequented by drug users. State v. Gordon, 646 So.2d at 1002.
In order to prove the element of intent to distribute, the state must prove the defendant's subjective specific intent to possess in order to distribute. Specific intent is a state of mind. It need not be proven as a fact and may be inferred from the circumstances present and the actions of the defendant. State v. Gordon, 646 So.2d at 1003.
In the instant case, the defendant's parole officer received a tip from an anonymous female informant providing that the defendant was selling illegal narcotics and that there was a substantial amount of cocaine located in the defendant's residence. She provided that the drugs could be specifically found in a hidden compartment in a dresser of drawers. When the officers located the hidden compartment, it contained two small bags of cocaine, a set of pinky scales, a razor blade that appeared to have cocaine residue on it, an exacto knife, and men's jewelry. The larger bag of cocaine was located in a separate dresser in the same bedroom. The defense presented the testimony of Joey Sanchez contending that he was leasing the master bedroom of the home from the defendant at the time of the search and that the drugs and other items belonged to him. Sanchez also testified that the defendant had no knowledge of the presence of the drugs in the home.
According to the officers' testimony, there were documents in the bedroom where the drugs were located that belonged to the defendant. Sanchez was not present at the home during the search. Although the defendant was not there when the officers initially arrived at the home, he got there shortly thereafter, along with his wife[5] and children. According *393 to Sergeant Swann's testimony, when the officers entered the home, the defendant stated that the master bedroom was his bedroom. Each officer's testimony indicated that the defendant did not mention Sanchez or state that any other person was occupying the bedroom where the drugs were located. Also, during his testimony, the defendant admitted that the dresser of drawers with the hidden compartment and the other furniture in the master bedroom were his property. According to the defendant's parole officer, Agent Roberts, at the time of the search the defendant admitted that he had recently used cocaine. He further recalled the defendant stating that his sister-in-law must have been the person that "ratted me out." Sergeant Swann, Detective Mistretta, and Agent Phelps testified that the defendant stated that the two smaller bags of suspected cocaine belonged to him but were for his personal use only. The defendant denied making such statements during his testimony.
As the trier of fact, a jury is free to accept or reject, in whole or in part, the testimony of any witness. State v. Williams, XXXX-XXXX, p. 6 (La.App. 1st Cir.6/21/02), 822 So.2d 764, 768. Moreover, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Williams, 822 So.2d at 768. We do not find the jury's rejection of the hypothesis of innocence presented by the defendant unreasonable. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the state successfully excluded any reasonable hypothesis of innocence and proved the elements of the offense beyond a reasonable doubt. This assignment lacks merit.

CONCLUSION
Finding no error, we affirm the defendant's convictions for possession of cocaine with intent to distribute and as a multiple offender. Likewise, we affirm the sentence imposed by the trial court.
CONVICTIONS AND SENTENCE AFFIRMED.
NOTES
[1] Hon. Phillip C. Ciaccio, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The trial court did not state that the first five years of the sentence would be served without the benefit of parole. However, according to LSA-R.S. 15:301.1, the sentence would automatically be served without such benefit.
[3] The defendant's parole officer, Agent Roberts, did not testify at the motion to suppress hearing but did testify during the trial. His testimony, along with other evidence adduced at trial, will be considered. An appellate court in reviewing a ruling upon a motion to suppress may consider not only the evidence presented at the motion hearing, but also the evidence adduced at trial. State v. Seward, 509 So.2d 413, 416 n. 8 (La.1987).
[4] Although Sergeant Swann provided that the defendant had a probation officer, the record is clear that the defendant was on parole at the time of the search and Agent Roberts was his parole officer.
[5] The record commonly refers to Wendy Hamilton as the defendant's wife. However, during his testimony the defendant indicated that she was the mother of his children but that he was not married.