675 So.2d 1141 (1996)
STATE of Louisiana
v.
Jimmy GRAVES.
No. 95 KA 0578.
Court of Appeal of Louisiana, First Circuit.
May 10, 1996.
*1143 Doug Moreau, District Attorney, and Jesse Bankston, Assistant District Attorney, Baton Rouge, for Appellee State of Louisiana.
Edward Greenlee, Baton Rouge, for Appellant Defendant Jimmy Graves.
Before WATKINS and FOIL, JJ., and TANNER,[*] J. Pro Tem.
FOIL, Judge.
Defendant, Jimmy Graves, was charged by bill of information with fourth offense driving while intoxicated (DWI), a violation of LSA-R.S. 14:98. He pled not guilty and, after trial by jury, was convicted as charged. The trial court sentenced defendant to imprisonment at hard labor for a term of twenty years with credit for time served. Defendant appealed, urging two assignments of error. We affirm.

FACTS
On February 2, 1994, at about 1:10 a.m., Louisiana State Trooper Mike Neal was on patrol on O'Neal Lane in Baton Rouge, Louisiana. He turned his police unit onto Old Hammond Highway proceeding east and came up behind defendant's vehicle. While following defendant, Neal twice observed defendant's vehicle cross the centerline of the highway by about two tire widths. Just after defendant passed Stevendale Drive,[1] defendant turned into the parking lot at the Stevendale Baptist Church. At that point, Neal activated the emergency lights on his unit and turned into the parking lot behind defendant. Defendant "looped around" in the parking lot, exited onto Old Hammond Highway, turned right on Stevendale Drive and proceeded north. Defendant appeared to be accelerating at that time. Neal then turned on the sirens of his police unit and called for the assistance of a backup trooper, notifying Troop A that he was in pursuit of a fleeing subject. When defendant reached the service road to Highway 190, Florida Blvd., he slowed down and turned right before accelerating again as he proceeded east on the service road. As defendant returned to Old Hammond Highway, he lost control of his vehicle, knocked down the stop sign at the intersection of the service road and Old Hammond Highway and ran into a ditch at that intersection. Neal shined his spotlight on defendant, reported to Troop A that defendant had run into a ditch, exited his police unit and ordered defendant to exit his vehicle. Defendant just remained seated in his vehicle and looked at Neal. Neal could not see defendant's hands. After Neal repeated his order to defendant to exit his vehicle and defendant still did not comply, Neal decided to wait for a backup officer before trying to remove defendant from the vehicle. Shortly thereafter, Trooper Kirk D. Martin arrived at the location. After the officers succeeded in having defendant exit the vehicle, they had him get down on his knees and took him into custody. Neal smelled alcohol on defendant's person and defendant appeared to be intoxicated. Neal handcuffed defendant, advised him of his constitutional rights and transported him to Troop A where Neal administered a field sobriety test (horizontal gaze nystagmus test, walk and turn test and one leg stand test) to defendant. After Neal was satisfied that defendant failed the field sobriety test, he read defendant his rights relating to the intoxilyzer test for intoxication. Defendant declined to take the intoxilyzer test. Following his arrest for driving while intoxicated, defendant was transported to jail.
At trial, the state presented the testimony of Neal and Martin. The state also introduced several items of documentary evidence at trial, namely, a field sobriety test form, a rights relating to chemical test for intoxication form and Neal's uniform DWI arrest report. The state and defendant entered into a stipulation that defendant had been convicted of the three predicate DWI convictions alleged in the instant bill of information. *1144 Defendant did not present any testimonial evidence. However, he did introduce several photographs into evidence, which depict the intersection of Old Hammond Highway and O'Neal Lane, the intersection of Old Hammond Highway and Stevendale Drive, the Stevendale Baptist Church and the intersection and ditch where defendant was taken into custody.
Neal indicated during his testimony that he had been instructed as part of his law enforcement training to administer a field sobriety test on a flat, level surface so the subject will receive a fair test. Neal identified State Exhibit S-1 as the field sobriety test form which he filled out for defendant's test. Consistent with the contents of S-1, Neal testified that on the horizontal gaze nystagmus test defendant displayed no smooth pursuit in either of his eyes. Defendant had nystagmus, jerking at maximum deviation and prior to forty-five degrees. In his testimony, Neal stated that the result of this first test indicated to him defendant was "definitely intoxicated." Nevertheless, Neal administered two other sobriety tests to gather additional evidence of defendant's intoxication. Neal testified that defendant performed poorly on the next test he administered, the walk and turn test. Defendant failed to touch his heel to toe four separate times. Additionally, defendant did not keep his balance while listening to instructions for the walk and turn test, lost his balance while walking, used his arms for balance and lost his balance while turning. Neal testified that his observations of defendant's performance on the walk and turn test indicated to him defendant was intoxicated. Finally, Neal had defendant perform the one leg stand test, on which he did poorly. Defendant placed his foot down twice during the test and miscounted during the test. The result of this test also indicated to Neal that defendant was intoxicated. On cross-examination, Neal stated that part of the field sobriety test was to determine if the subject could follow instructions. Neal acknowledged that defendant followed instructions and, thus, passed that part of the test.
Neal testified that he filled out the necessary paperwork relating to this case after defendant declined to take the intoxilyzer test. Neal stated that, while he was offering defendant the option to take the intoxilyzer test, defendant made the statement: "I know I'm drunk." Neal testified that he makes arrest reports to help him remember and writes down everything he considers important, i.e., the facts that support the arrest. Neal testified that as part of his arrest report (Exhibit S-3) he filled out a questionnaire, which consisted of questions he asked defendant and defendant's answers. When asked if he had been drinking that night, defendant answered in the affirmative; but when asked if he was presently under the influence of an alcoholic beverage, defendant answered in the negative. Neal asked defendant if he was taking any type of medication, which evoked a negative reply from defendant; and, in response to Neal's inquiry as to whether or not defendant had any physical defects or infirmities, defendant stated that he did not. Consistent with the contents of S-3, Neal testified that he indicated on the checklist that defendant's alcoholic breath odor was "moderate," his walking was "swaying," his turning was "unsure," and his balance was "swaying." Under ability to drive, Neal marked "impaired."
Martin testified that when he arrived at the scene he and Neal ordered defendant out of his vehicle. Defendant was very hesitant but, after several requests, exited the vehicle. After defendant was placed inside Neal's unit, Martin got within one foot of defendant, "right up in his face." According to Martin, defendant "really didn't understand what was going on." Defendant's eyes were "droopy," and he had "mumbled speech." Martin could not understand defendant's speech, and he smelled a very strong odor of alcohol on defendant's breath. When asked how long he spent with defendant, Martin answered: "I would probably say less than a minute."
Based on his observations of defendant and his experience as a law enforcement officer, Martin concluded defendant was intoxicated. He cited several factors forming the basis of his conclusion, including defendant's failure to comply with orders, the fact defendant was slow "as if he was trying to think about what [the officers] were saying," *1145 defendant's slurred speech, bloodshot eyes, and the very strong odor of alcohol on defendant's breath. Martin further testified that, when Neal transported defendant to Troop A, he stayed with defendant's vehicle to await the arrival of a tow truck for the vehicle. He filled out an inventory form of the vehicle's contents and found numerous empty beer bottles wrapped in empty paper bags inside the vehicle.

ASSIGNMENT OF ERROR NO. ONE
In this assignment, defendant contends that the evidence is insufficient to support the instant conviction. Defendant argues that the circumstantial evidence presented by the state, particularly Neal's subjective interpretations of his performance on the field sobriety test, did not prove he was guilty of the instant offense beyond a reasonable doubt, nor did it exclude the reasonable hypothesis of innocence that, although he had been drinking, he was not intoxicated. Defendant submits that Neal's arrest report which was introduced into evidence by the state "suggests that the reason [defendant] did not have perfect results on the [sobriety] tests was that he was rather shaken up after running his car into a ditch." Defendant asserts that this hypothesis is further strengthened by the fact that his car was not speeding or weaving and that Neal suspected him of driving while intoxicated only because the tire of defendant's vehicle crossed the centerline of the highway by a distance of two tire widths. Defendant also asserts that, according to Trooper Neal's arrest report (S-3), defendant did not do poorly on the field sobriety test; however, this final assertion is directly contradicted by Neal's trial testimony and the arrest report itself which clearly states that the subject "performed poorly" on the horizontal gaze nystagmus, walk and turn and one leg stand tests.
The proper method to raise the issue of insufficient evidence is by motion for post-verdict judgment of acquittal. See LSA-C.Cr.P. art. 821; State v. McManus, 94-0974, p. 5 (La.App. 1 Cir. 6/23/95); 658 So.2d 811, 814. Nevertheless, we will consider a claim of insufficiency of the evidence which has been briefed pursuant to a formal assignment of error.
In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). That standard is that the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt. State v. Captville, 448 So.2d 676, 678 (La. 1984). The standard has been codified in LSA-C.Cr.P. art. 821.
When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 mandates that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." This statutory test is not a purely separate one from the Jackson constitutional sufficiency standard. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden. State v. Rosiere, 488 So.2d 965, 968 (La.1986).
In order to convict an accused of driving while intoxicated, the state need only prove that the defendant was operating a vehicle and that he was under the influence of alcohol or drugs. State v. Fontenot, 408 So.2d 919, 921 (La.1981). Here, there is no dispute that defendant was operating a vehicle. Thus, we are only concerned with whether the state proved defendant was under the influence of alcohol.
Intoxication with its attendant behavioral manifestations is an observable condition about which a witness may testify. What behavioral manifestations are sufficient to support a charge of driving while intoxicated must be determined on a case by case basis. Some behavioral manifestations, independent of any scientific test, are sufficient to support a charge of driving while intoxicated. *1146 State v. Pitre, 532 So.2d 424, 428 (La.App. 1st Cir.1988), writ denied, 538 So.2d 590 (La.1989). Furthermore, an officer's subjective opinion that a subject failed a field sobriety test may constitute sufficient evidence of intoxication to support a DWI conviction. See State v. Smith, 93-1490 (La. App. 1st Cir. 6/24/94); 638 So.2d 1212, 1215; State v. Kent, 610 So.2d 265, 267 (La.App. 5th Cir.1992).
In this case, the evidence included Neal's observations of defendant's driving which he indicated on the arrest report was impaired, and his observations made after the stop of defendant's breath, speech, walking, turning and balance, defendant's poor performance on the field sobriety tests, his refusal to take the intoxilyzer test and the statement of defendant that he was drunk. Also, there were the observations made by Martin of the empty beer bottles in defendant's vehicle and defendant's breath odor, speech and appearance. Finally, both Neal and Martin concluded that, based on their observations and experiences as law enforcement officers, defendant was intoxicated. Viewing all of the evidence in the light most favorable to the state, any rational trier of fact could have concluded beyond a reasonable doubt and to the exclusion of any reasonable hypothesis of innocence that defendant was guilty of DWI. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. TWO
In this assignment, defendant contends that the trial court erred by imposing an excessive sentence. Defendant asserts that the sentence imposed by the court should have reflected that the incident which brought about the instant conviction was not "the worst type scenario." He submits that his sentence is out of proportion to the seriousness of the crime, that the sentence should be vacated and the case remanded for resentencing.
Defendant was sentenced on January 6, 1995. Therefore, the advisory sentencing guidelines promulgated by the Louisiana Sentencing Commission (effective January 1, 1992) were applicable to his sentencing.[2] The trial court denied defendant's written motion to reconsider sentence on January 18, 1995.
Fourth offense DWI is punishable by imprisonment at hard labor for a minimum of ten and a maximum of thirty years and a possible maximum fine of five thousand dollars. See LSA-R.S. 14:98(E). Herein, defendant received a sentence of imprisonment at hard labor for a term of twenty years, and no fine was imposed.[3]
Prior to its recent amendment, former LSA-C.Cr.P. art. 894.1(A) required a trial court to consider the sentencing guidelines promulgated by the Louisiana Sentencing Commission. Provided that the court complied with the requirements of former Article 894.1, it had "complete discretion to reject the Guidelines and impose any sentence which is not constitutionally excessive, but is within the statutory sentencing range for the crime of which a defendant has been convicted...." State v. Smith, 93-0402, p. 3 (La. 7/5/94); 639 So.2d 237, 240 (on rehearing) (footnote omitted).
In this case, the trial court ordered a presentence investigation report (PSI). At the sentencing hearing, the court stated it had received and reviewed the PSI. The court noted that the applicable sentencing grid under the guidelines was a 7-G and that it was departing from the recommended sentencing range of the guidelines.
In articulating sentencing reasons, the court stated that it was giving both aggravating and mitigating reasons for the sentence to be imposed. The court noted that the thirty-two-year-old defendant, who was classified as a second felony offender, was not a youthful offender but had a good work record. *1147 The court stated that defendant had a significant criminal history of DWI arrests which had resulted in ten DWI convictions. The court took cognizance that, although defendant obviously had a continuing alcohol problem of long standing, defendant had never sought treatment for his alcohol abuse problems.
In articulating further reasons, the court stated that defendant was in need of a custodial environment or correctional treatment. The court observed that defendant appeared to be a career criminal and a chronic offender of the DWI laws. The court noted that defendant was on probation for DWI at the time he committed the instant offense. The court indicated that defendant's attitude of denial is ludicrous in the face of the evidence present in this case. The court noted that defendant continues to accept no responsibility for drinking and driving, despite his horrendous traffic and criminal record. The court stated that defendant is certainly a danger to the driving public with his present attitude of innocence and his refusal to face his serious alcohol problem. In conclusion, the court stated that jail time was the only way to impress upon defendant the severity of the instant offense in light of his record.
Our review of the record convinces us that the trial court considered the Commission's guidelines and adequately stated the considerations taken into account and the factual basis for imposition of defendant's sentence. Consequently, under State v. Smith, our review of defendant's sentence is limited to one for constitutional excessiveness without regard as to whether the trial court employed or deviated from the guidelines. Article I, Section 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. A sentence is constitutionally excessive if it is grossly disproportionate to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is grossly disproportionate if it shocks the sense of justice, when the crime and punishment are considered in light of the harm to society. The sentence imposed will not be set aside absent a showing of manifest abuse of the trial court's wide discretion to sentence within the statutory limits. State v. Lobato, 603 So.2d 739, 751 (La.1992).
Considering the facts of this case, we find defendant's sentence is not disproportionate to the offense committed or to the offender and is supported by the record. Hence, we find no abuse of discretion in the imposition of the sentence. This assignment lacks merit.
Accordingly, defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[*] Judge Thomas W. Tanner, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[1] Neal testified that the distance between Stevendale Drive and the intersection of O'Neal Lane and Old Hammond Highway is about three-tenths of a mile.
[2] LSA-C.Cr.P. art. 894.1 was amended by 1995 La.Acts No. 942, § 1, effective August 15, 1995. The amendment included a deletion of the former requirement that a trial court consider the guidelines promulgated by the Commission.
[3] Although the trial court erred by failing to impose at least one year of the sentence without parole as required by LSA-R.S. 14:98(E), this court will not correct the sentence as the error is in defendant's favor and the state has not appealed the illegal sentence. See State v. Fraser, 484 So.2d 122 (La.1986).