985 So.2d 771 (2008)
STATE of Louisiana
v.
Gena F. PARRY.
No. 2007/KA/1972.
Court of Appeal of Louisiana, First Circuit.
March 26, 2008.
*772 Walter P. Reed, District Attorney, Covington, LA, Kathryn W. Landry, Special Appeals Counsel, Baton Rouge, LA, for Appellee State of Louisiana.
Katherine M. Franks, Abita Springs, LA, for Defendant/Appellant/Gena A. Parry.
Before GAIDRY, McDONALD and McCLENDON, JJ.
McDONALD, J.
Defendant, Gena Parry, was charged by bill of information with third-offense driving while intoxicated (DWI), a violation of La. R.S. 14:98(D). Defendant pled not guilty and waived her right to be tried by a jury. Following a bench trial, defendant was found guilty as charged. The trial court sentenced defendant to three years imprisonment at hard labor, and suspended all but thirty days of the sentence. Defendant was placed on three years probation with special conditions, including four to six weeks of substance abuse treatment and evaluation; home incarceration with electronic monitoring for the remainder of her term; a fine of $2,000.00; her vehicle seized and sold; and driver-improvement classes. Defendant would be allowed to drive with an interlock device.
Defendant appeals, citing the following assignments of error:
1. Insufficient credible evidence was offered at trial to demonstrate beyond a reasonable doubt that [defendant] was driving under the influence of alcohol.
2. The sentence imposed was inadequately reasoned, imposed with no attempt to tailor the sentence to the offender and excessive under the circumstances of the case. The judge, lacking any information about [defendant], imposed conditions that make the probation doomed to failure from its outset while leaving others to the discretion of the Probation and Parole Department with no judicial input.
3. The judge committed error in sentencing [defendant] immediately following the adjudication of guilt without a waiver of the twenty-four hour mandatory delay set by La.Code Crim. P. art. 873.
We affirm defendant's conviction, vacate her sentence, and remand for resentencing.

*773 FACTS
Shortly after midnight on August 10, 2005, Louisiana State Police Trooper Coy Canulette was on patrol in Slidell. As Trooper Canulette was traveling northbound on Louisiana Highway 11 (also known as Pontchartrain Drive), he observed a vehicle ahead of him (driven by defendant) cross the dashed-white-line separating the left and right northbound lanes of the roadway three times. Trooper Canulette activated the lights of his unit and initiated a traffic stop of defendant's vehicle.
Defendant brought her vehicle to a stop along the shoulder of La. Hwy. 11, in front of an Ace Hardware Store. After defendant exited her vehicle, Trooper Canulette detected a strong odor of alcohol on defendant's breath. In response to Trooper Canulette's inquiries, defendant denied that she had consumed any alcoholic beverages prior to being stopped. Trooper Canulette then administered the field sobriety tests. On the horizontal gaze nystagmus (HGN) test, Trooper Canulette noted that all six clues of impairment were present.[1] These clues include lack of smooth pursuit, distinct nystagmus at maximum deviation, and nystagmus onset prior to forty-five degrees, which were present in both of defendant's eyes.
Trooper Canulette then administered the walk-and-turn test to defendant. During this test, Trooper Canulette noted that defendant failed to keep her balance during the instructions, did not touch heel to toe while walking, stepped off the line while walking, veered to the right while walking, and turned incorrectly. Trooper Canulette also testified that when defendant performed the one-legged-stand test, she swayed and then stated she suffered from vertigo and was unable to complete the test. Trooper Canulette's unit was equipped with a dashboard camera. The videocassette tape of the trooper's encounter with defendant was played for the trial court.
Defendant again denied that she had consumed any alcohol. Based on his observations of defendant and her performance on the field sobriety tests, Trooper Canulette placed defendant under arrest for DWI. A male occupant in defendant's vehicle was transported by another law enforcement officer to a nearby gasoline station.
Trooper Canulette transported defendant to the Slidell Police Department where he offered her a breath test. Trooper Canulette also testified that defendant stated she had consumed a few beers before going to sleep. According to Trooper Canulette, defendant refused to take a breath test at the Slidell Police Station. On cross-examination, Trooper Canulette admitted he was unaware of how vertigo would affect the HGN test; however, he stated that vertigo would have no relation to the smell of alcohol on defendant's breath.
Defendant testified at trial and admitted that she had pled guilty in two prior DWI convictions.[2] Defendant denied she had been drinking prior to this incident, and further denied she indicated to Trooper Canulette that she had consumed a few beers earlier that evening.
*774 Defendant testified earlier that day, she had been moving from an apartment, and she had been using various cleaning products. According to defendant, she briefly fell asleep, awoke, and decided to purchase something to eat from a nearby fast-food restaurant. Defendant denied that she weaved multiple times between lanes, but explained that she had to change over four lanes in a short distance to return to her apartment. Defendant maintained that she used her blinker in doing so.
Defendant testified that two months prior to this incident, she had sustained a concussion that caused vertigo. Defendant explained that her doctor had indicated the vertigo could last from six to twelve months. Defendant stated that during these episodes when she would lean down, or look sideways without turning her head, she would experience a spinning feeling. Defendant testified that she felt these symptoms while attempting to do the one-legged-stand test. Defendant further explained that during the walk-and-turn test, she was trying to avoid chunks of asphalt on the side of the road and did not walk straight.
Defendant testified that she requested to take a breath test, but that Trooper Canulette would not administer such a test on the scene. Defendant claimed she blew in the breath machine at the police station three times, but that Trooper Canulette would not mark her results. On cross-examination, defendant claimed she never drinks beer; that she only consumed French fries prior to being stopped; and that Trooper Canulette was lying about her refusal to provide a breath sample.
The defense also called Robert Reese, who was qualified as an expert in administering the standardized field sobriety tests, with the caveat that he had not participated in any administering or training in the past ten years. According to Reese, the HGN test should take a bare minimum of sixty-two to sixty-four seconds to administer, exclusive of the instructional phase. Reese viewed the videotape from Trooper Canulette's dashboard camera showing defendant performing the field sobriety tests, and concluded that Trooper Canulette explained and administered the HGN test in less than sixty seconds, which was too quickly. Reese explained that by administering this test too quickly, it can negate the equal tracking and onset of nystagmus components, which are four of the six clues of impairment tested. Reese testified that the maximum-deviation clue could not be negated because Trooper Canulette held the stimulus long enough to observe this clue; however, prior to testing for maximum deviation, Trooper Canulette moved the stimulus too quickly. Reese testified that he was very familiar with Trooper Canulette and even vouched for the trooper's credibility by stating that he could "guarantee" that Trooper Canulette would not lie about anything. Reese admitted that he was unaware what effect vertigo would have on detecting nystagmus.
The trial court found defendant guilty of third-offense DWI. The trial court specifically found defendant's assertion that she blew into a breath machine three times and the trooper would not write it down, to be incredible. The trial court conceded that the videotape of the field sobriety tests does not show defendant to be "completely inebriated," but based on Trooper Canulette's testimony that defendant had a strong odor of alcohol on her breath; defendant's vehicle had been observed weaving in traffic; and the maximum-deviation portion of the HGN test had been performed correctly; there was enough evidence to conclude that defendant was guilty of third-offense DWI.

SUFFICIENCY
In her first assignment of error, defendant argues the evidence is insufficient *775 to support the conviction for third-offense DWI. Defendant argues that the videotape of Trooper Canulette administering the field sobriety tests refutes his trial testimony in that defendant did not need assistance getting out of her vehicle; defendant did not sway or hold onto her vehicle as she walked between the area where she exited and the rear of her vehicle; defendant's speech was not slurred; and her performance on the walk-and-turn test did not indicate impairment.
In reviewing the sufficiency of the evidence to support a conviction, we are controlled by the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This standard, codified in La.Code Crim. P. art. 821, is that the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proven beyond a reasonable doubt. State v. Graves, 95-0578, p. 6 (La.App. 1st Cir.5/10/96), 675 So.2d 1141, 1145.
When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 mandates that assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. This statutory test is not a purely separate one from the Jackson constitutional-sufficiency standard. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational trier of fact that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden. State v. Graves, 95-0578 at p. 7, 675 So.2d at 1145.
In order to convict an accused of driving while intoxicated, the State need only prove that the defendant was operating a vehicle and that the defendant was under the influence of alcohol or drugs. State v. Graves, 95-0578 at p. 7, 675 So.2d at 1145. In this case, there is no dispute that defendant was operating a vehicle. Thus, we are only concerned with whether the State proved defendant was under the influence of alcohol.
Intoxication with its attendant-behavioral manifestations is an observable condition about which a witness may testify. What behavioral manifestations are sufficient to support a charge of driving while intoxicated must be determined on a case-by-case basis. Some behavioral manifestations, independent of any scientific tests, are sufficient to support a charge of driving while intoxicated. Furthermore, an officer's subjective opinion that a subject failed a field sobriety test may constitute sufficient evidence of intoxication to support a DWI conviction. State v. Graves, 95-0578 at p. 7, 675 So.2d at 1145-46.
We agree with the trial court's finding that the videotape does not reflect that defendant was "completely inebriated." However, the videotape does not dispute Trooper Canulette's trial testimony to the extent that defendant claims. First, we note the videotape reflects defendant briefly placed her hand on her vehicle two times as she exited and walked to the rear to meet the trooper. The videotape also reflects Trooper Canulette issued four separate commands to defendant to exit her vehicle over the span of forty-five seconds before defendant actually complied. Following Trooper Canulette's explanation of why he stopped defendant, he directly asked her if she was falling asleep at the wheel, and she denied such. At that point, defendant offered no explanation that she had just woken up.
Defendant contends the pavement in the area where she walked and performed the field sobriety tests was uneven. There is *776 no way to clearly verify this contention; however, she made no complaint or comment about the condition of the area when performing these tests. Moreover, Trooper Canulette demonstrated the walk-and-turn test in the same area with no problems.
The audible portions of the videotape do not clearly indicate defendant's speech was slurred; however, she interrupts Trooper Canulette's instructions to the HGN, the walk-and-turn, and the one-legged-stand tests. Defendant's performance on the walk-and-turn test clearly indicates she veers to the right and did not turn and walk the second nine steps as initially instructed by Trooper Canulette. It was only after Trooper Canulette reminded her to turn and walk the second nine steps that defendant completed the test, wherein she slightly swayed.
The videotape also reflects that during the one-legged-stand test, defendant could not maintain her balance with her arms at her side; rather, defendant moved her arms away from her side to maintain balance. Defendant ceased this test, explaining to the trooper that she had vertigo and could not perform this test. Defendant then initiated a disagreement with the trooper concerning where her eyes should be focused before declaring she could not complete the test.
Defendant further denies she ever stated she had consumed beer at any point that evening and claimed that Trooper Canulette was lying when he indicated she refused the breath test. Defendant maintained at trial that she blew into a breath machine three different times, but Trooper Canulette refused to record the results. We note that the defense expert, Robert Reese, testified Trooper Canulette does not lie and his integrity was unquestionable.
In finding the defendant guilty as charged, the trial court obviously accepted the testimony of Trooper Canulette and rejected defendant's testimony and her hypothesis of innocence, i.e., that she had just woken up, had cleaning products on her clothing, and suffered from vertigo. As the trier of fact, the trial court was free to accept or reject, in whole or in part, the testimony of any witness. Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. Moreover, when a case involves circumstantial evidence, and the trier of fact reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. See State v. Moten, 510 So.2d 55, 61 (La.App. 1st Cir.), writ denied, 514 So.2d 126 (La. 1987). On appeal, this Court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. State v. Williams, XXXX-XXXX, pp. 6-7 (La.App. 1st Cir.6/21/02), 822 So.2d 764, 768, writ denied, XXXX-XXXX (La.4/8/04), 870 So.2d 263. Under the circumstances here, we find the trial court reasonably rejected the hypothesis of innocence presented by the defense.
Based on our review of the record, we find the evidence supports the trial court's determination. Viewing the evidence in the light most favorable to the prosecution, a rational fact finder could have concluded defendant was operating her vehicle under the influence of alcohol. Defendant's vehicle was observed repeatedly weaving between lanes; she exhibited a strong odor of alcohol on her breath and performed poorly on the field-sobriety tests.

ARTICLE 873 VIOLATION
In her third assignment of error, defendant argues the trial court erred in *777 sentencing defendant immediately following her adjudication of guilt without a waiver of the mandatory delay set by La. Code Crim. P. art. 873.[3] Louisiana Code of Criminal Procedure article 873 provides:
If a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence. If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.
In the present case, the record reflects the trial court found defendant guilty of third-offense DWI and immediately proceeded to impose a sentence. The trial court did not inquire whether defendant was prepared for sentencing; however, defendant did not object to the sentencing. Following the sentencing, defense counsel filed motions for new trial, post-verdict judgment of acquittal and reconsideration of sentence, all of which were denied without a hearing. On appeal, defendant challenges her sentence as excessive (assignment of error number two).
It has long been held that the purpose of the delays set forth in La.Code Crim. P. art. 873 is to provide an opportunity to an accused who has been convicted to file, prior to sentence, further pleadings, such as a motion for new trial, a motion in arrest of judgment, etc., and, if he is denied the right to this delay, any sentence so imposed is void. State v. Augustine, 263 La. 977, 979, 270 So.2d 118, 119 (1972) (per curiam).
The failure to observe the Article 873 delays (as pertaining to the twenty-four hour period between denial of a motion for new trial and sentencing) has been held to be harmless, despite defendant's failure to waive this delay when the defendant has not assigned the issue as error, challenged his sentence on appeal, or made a showing of prejudice. See State v. Folse, 623 So.2d 59, 72 (La.App. 1st Cir.1993). However, in a more recent opinion, this Court has remanded the matter for resentencing when the delays were not waived by a defendant who challenged his sentence. State v. Denham, XXXX-XXXX, p. 5 (La.App. 1st Cir.12/28/01), 804 So.2d 929, 932, writ denied, XXXX-XXXX (La.1/24/03), 836 So.2d 37.[4]
The record reflects the trial court failed to observe the mandatory three-day delay between conviction and sentencing. The defendant did not waive this delay and has appealed the sentence received. We note that the penalty provision for third-offense DWI provides a range of sentencing. Defendant did not receive a mandatory sentence. Under these circumstances, we find that we must vacate defendant's sentence, and remand the matter for resentencing. Because the sentence has been vacated, defendant's second assignment of error raising the issue of excessive sentence is moot.
CONVICTION AFFIRMED, SENTENCE VACATED AND REMANDED FOR RESENTENCING.
NOTES
[1] Nystagmus is the involuntary jerking of a person's eyes that becomes more detectable after the consumption of alcohol.
[2] Defendant stipulated that she had two prior DWI convictions, including a conviction entered on March 5, 1997 under docket number 1997KS00953 in Slidell City Court, and a conviction entered on May 2, 2000 under docket number 315721 in the Twenty-Second Judicial District Court, St. Tammany Parish, (r. 29, 70)
[3] Although defendant's brief contends the trial court violated the twenty-four hour mandatory delay between adjudication and sentencing, Article 873 indicates that this delay is a three-day period.
[4] The Fifth Circuit has held as a general rule that when a defendant challenges a non-mandatory sentence and the statutorily mandated delays are not waived, the sentence must be vacated and remanded for resentencing. State v. Young, XXXX-XXXX, p. 14 (La.App. 5th Cir.4/26/05), 902 So.2d 461, 470 (and authority cited therein.).