HOLDRIDGE, J.
The defendant, Matthew J. Malarcher, was charged by bill of information with operating a vehicle while intoxicated, fourth offense, a violation of La. R.S. 14:98.4, and pled not guilty.[1] See also La. R.S. 14:98. After a trial by jury, the defendant was found guilty as charged. The trial court denied the defendant's motion for new trial. The trial court sentenced the defendant to eleven years imprisonment at hard labor, to be served without the benefit of probation, parole, or suspension of sentence and consecutive to any remaining balance of any sentence on a prior conviction, and a fine of five thousand dollars. See La. R.S. 14:98.4(C). The defendant now appeals, assigning error to the sufficiency of the evidence and the denial of his motion for new trial. For the following reasons, we affirm the conviction and sentence.
STATEMENT OF FACTS
On March 27, 2015, at approximately 12:42 a.m., Sergeant Duke Staples and Officer Louis Perry of the Baton Rouge City Police Department (BRPD) came into contact *840 with the defendant.[2] While on patrol for the DWI task force, the officers travelled northbound on St. Louis Street, as the defendant was travelling westbound on Government Street. The officers made a traffic stop after observing the defendant make an illegal left turn from Government Street on to St. Louis Street, southbound. A no-left-turn sign was posted at the intersection. The defendant pulled over at a restaurant parking lot, and the officers exited their units and approached the defendant's vehicle. Sergeant Staples identified himself and informed the defendant of the reason for the traffic stop. He further advised the defendant of his Miranda[3] rights, including the right to remain silent, that anything he stated can and will be used against him in a court of law, and of his right to an attorney and to discontinue questioning. The defendant confirmed that he understood his rights. Sergeant Staples asked the defendant for his identification, at which point he noticed a bulge in the defendant's front right pocket and what appeared to be a bottle protruding from his pocket. Sergeant Staples retrieved the bottle, a half empty pint-size bottle of Crown Royal whiskey, and gave it to Officer Perry as he continued to question the defendant. After making contact with the passenger of the vehicle, Officer Perry observed the defendant as he walked back towards his vehicle with Sergeant Staples. Sergeant Staples noted that the defendant was swaying, had an odor of an alcoholic beverage as if he had consumed alcohol, and had glassy eyes (consistent with consuming alcohol or smoking marijuana). Based on their observations, the officers decided to administer a standardized field sobriety test.[4]
As Sergeant Staples began administering the horizontal gaze nystagmus test, he instructed Officer Perry to step behind him to observe the maximum deviation of nystagmus. The defendant was then given the instructions for the one-leg stand test. Finally, the defendant was instructed to perform a walk-and-turn test. Based on the defendant's performance on the field sobriety testing, the officers concluded that the defendant was under the influence of an alcoholic beverage, placed him under arrest, and transported him to the site of headquarters and a DWI bus. After being advised of his rights by BRPD Lieutenant Byron Fontenot, the defendant refused breathalyzer and urine sample testing.
SUFFICIENCY OF THE EVIDENCE
In a combined argument, the defendant contends that the jury erred in finding that the State proved beyond a reasonable doubt that he was under the influence of alcohol at the time of his arrest. He further contends that the trial court erred in denying his motion for new trial. Quoting State v. Hightower, 238 La. 876, 885-86, 116 So.2d 699, 703 (1959), the defendant argues that there was not a sufficient amount of circumstantial evidence to prove that he was "incapable of operating an automobile in a manner in which an ordinarily prudent and cautious *841 man in full possession of his faculties, using reasonable care, would operate a motor vehicle under the conditions." He argues that he was driving in a safe, cautious, and prudent manner, claiming that the illegal turn was made in a safe manner and that he was not driving erratically. The defendant contends that the police officers followed him for three or four blocks after the illegal turn and did not observe any additional violations. He contends that he exited his vehicle as instructed, walked without swaying or stumbling, and spoke clearly with intact thought processing. The defendant argues that the results of the field sobriety test are invalid and should be disregarded. He contends that it was cold and windy at the time of the field sobriety test, that he was wearing short sleeves, that it was dark outside, and that Sergeant Staples' police unit spotlight was shining directly into his face. He further contends that the evidence failed to show that Sergeant Staples was properly trained or that the field sobriety test was properly administered. The defendant finally argues that Officer Fontenot's testimony that the defendant had a green tongue, implying that he had smoked marijuana, has no probative value.[5] In that regard, he contends that Officer Fontenot had no training or qualification to render such an opinion. The defendant is not challenging his prior DWI convictions.
The defendant contends that the trial court erred in denying his motion for new trial based on arguments that the verdict is contrary to the law and the evidence, and that the ends of justice would be served by granting a new trial. La. Code Crim. P. art. 851(B)(1) & (5). However, the grant or denial of a new trial on either basis is not subject to appellate review. State v. Bartley, 329 So.2d 431, 433 (La. 1976) ; State v. Williams, 2002-0065 (La. App. 1st Cir. 6/21/02), 822 So.2d 764, 770, writ denied, 2003-0926 (La. 4/8/04), 870 So.2d 263. We note that the defendant, in essence, only challenges the sufficiency of the evidence to support his conviction. The proper procedural vehicle for raising the sufficiency of the evidence is by filing a motion for post-verdict judgment of acquittal before the trial court. See La. Code Crim. P. art. 821. Nevertheless, despite the defendant's failure to file such a motion, we will consider his claim of insufficiency of the evidence which has been briefed pursuant to a formal assignment of error. See State v. Williams, 613 So.2d 252, 255 (La. App. 1st Cir. 1992).
A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV ; La. Const. art. I, § 2. In reviewing claims challenging the sufficiency of the evidence, this court must consider whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also La. Code Crim. P. art. 821(B) ;
*842 State v. Ordodi, 2006-0207 (La. 11/29/06), 946 So.2d 654, 660. The Jackson standard of review, incorporated in Article 821(B), is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that, in order to convict, the fact finder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. Patorno, 2001-2585 (La. App. 1st Cir. 6/21/02), 822 So.2d 141, 144. When a case involves circumstantial evidence and the trier of fact reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Moten, 510 So.2d 55, 61 (La. App. 1st Cir.), writ denied, 514 So.2d 126 (La. 1987).
In order to convict a defendant of driving while intoxicated, the prosecution must prove that the defendant was operating a vehicle and that he was under the influence of alcohol or drugs. La. R.S. 14:98. In State v. Hightower, the court stated that "a person is intoxicated within the provisions of the statute when he does not have the normal use of his physical and mental faculties by reason of the use of alcoholic beverages (or narcotics), thus rendering such person incapable of operating an automobile in a manner in which an ordinarily prudent and cautious man in full possession of his faculties, using reasonable care, would operate a motor vehicle under like conditions." Hightower, 116 So.2d at 703.
It has been widely recognized that intoxication, with its attendant behavioral manifestations, is an observable condition about which a witness may testify. State v. Allen, 440 So.2d 1330, 1334 (La. 1983). Some behavioral manifestations, independent of any scientific tests, are sufficient to support a charge of driving while intoxicated. State v. Pitre, 532 So.2d 424, 428 (La. App. 1st Cir. 1988), writ denied, 538 So.2d 590 (La. 1989). Behavioral manifestations, sufficient to support a charge of DWI, in the absence of a scientific test, are determined on a case-by-case basis. State v. Anderson, 2000-1737 (La. App. 1st Cir. 3/28/01), 784 So.2d 666, 676, writ denied, 2001-1558 (La. 4/19/02), 813 So.2d 421. An officer's subjective opinion that a subject failed a field sobriety test may constitute sufficient evidence of intoxication to support a DWI conviction. State v. Graves, 95-0578 (La. App. 1st Cir. 5/10/96), 675 So.2d 1141, 1146. We note that because the defendant refused to take a breath test, the legal presumption of intoxication contained in La. R.S. 14:98(A)(1)(b) is inapplicable herein.
Sergeant Staples had been working as a uniform patrol officer for twenty years and for the DWI task force for nearly three years at the time of the trial. He testified that he conducted an average of sixty to eighty DWI arrests annually. He completed academy DWI training, consisting of a forty-hour intoxilyzer course, thirty-two hours of training in standardized field sobriety testing, and in-service refresher courses. He further indicated that he had current certifications for the use of intoxilyzer machines. At the time of the offense, Officer Perry had been on the force for nine months as a BRPD uniform patrol officer and was "riding along" with Sergeant Staples, who was primarily responsible for conducting the stop. Officer Perry's training consisted of forty hours of DWI training (class room and practical) at the academy and approximately three weeks of field training before he began independently conducting DWI investigations. At the time of the offense, he had completed his training at the academy, and riding along with other more experienced officers was part of his recommended field training. As a result of his training he was *843 certified to perform field sobriety tests and for the use of intoxilyzer machines.
In defining the horizontal gaze nystagmus test, Sergeant Staples noted that nystagmus is an involuntary jerking of the eyes and that an impaired individual may exhibit exaggerated effects. Therefore, the nystagmus test involves the use of a stimulus like a penlight to test for nystagmus, detected by the involuntary jerking of the eyes. As further described by the officers, the testing includes a check for the onset of nystagmus prior to forty-five degrees. This involves slowly moving the stimulus from the center of the subject's eye at his face to approximately forty-five degrees which is usually even with the subject's shoulder. Officer Perry observed that the defendant was unable to follow his pen during the maximum deviation. Further regarding the nystagmus test, Sergeant Staples noted that the defendant had a lack of smooth pursuit. He detected clues on both eyes during the maximum deviation and detected a total of four clues for the entire horizontal gaze nystagmus test. He noted that those four clues, the minimum required for a horizontal gaze nystagmus test, would be sufficient to make a determination of impairment.
A minimum of two additional clues were observed during the one-leg stand test. For the one-leg stand test, the defendant was instructed to stand with his feet together, place his hands by his sides, and to look down at his feet. Sergeant Staples observed the defendant for any physical disabilities or injuries and none were noted. The defendant was further instructed to lift one foot approximately six inches off of the ground and count out loud for thirty seconds while looking down. The subject is allowed to pick their foot back up and resume counting if their foot is placed down. The observable clues include swaying, using arms for balance, putting a foot down, and hopping. During this test, the defendant put his foot down twice, once at ten to twelve seconds, brought his left arm out for balance, and put his foot down again at approximately eighteen seconds, losing his balance at that point and swaying.
For the walk-and-turn test, the defendant was instructed (as also demonstrated by Sergeant Staples) to place his hands to his sides, his feet together, to lift his left foot and place it on the line in front of him, to repeat the same with his right foot, and to continue with a series of nine heel-to-toe steps. He was further instructed to turn and take small steps, to pivot to his left and come back around, and to continue with nine additional heel-to-toe steps. The defendant was informed that he could ask questions or for further demonstrations if necessary. During this test, the defendant lost his balance from the onset, turned the wrong way, and stepped out of line, using his arms for balance. Thus, another four clues were detected, well over the required two clues for the walk-and-turn test.
The officers confirmed that it was windy or breezy at the time of the incident, that Sergeant Staples was wearing a coat, and that the defendant was wearing a short sleeve shirt and jeans. However, the defendant did not make any statements of concern about the wind or indicate that it was impeding his ability to perform the tests. Sergeant Staples further confirmed that his spotlight on his unit was being used to illuminate the area. He noted that there was enough light for adequate visibility. The defendant did not make any complaints about the light or indicate that it was too bright.
After the defendant was transported to the DWI bus, Lieutenant Fontenot, the commander of the BRPD DWI task force at the time, observed him for the requisite fifteen-minute period while advising him of *844 his rights and the consequences of refusal to submit to chemical testing. The defendant refused to take the intoxilyzer breath test, and, after initially indicating that he would submit to a urine screen, refused to provide a urine sample. However, after having been advised of his Miranda rights, the defendant answered questions posed to him by Lieutenant Fontenot. During the questioning, the defendant denied consuming alcohol, and stated that he was refusing testing because the attorney who represented him on previous DWI offenses advised him not to submit to chemical testing. Lieutenant Fontenot asked the defendant to stick his tongue out and observed that the back of the defendant's tongue was green with pronounced taste buds, which he testified indicated to him that the defendant had smoked marijuana. The defendant initially denied smoking marijuana, but then confirmed that he smoked a half a blunt of marijuana at a friend's house, and that the stop took place after he left his friend's house. The defendant did not testify at trial.
A law officer may testify as to matters within his personal knowledge acquired through experience without first being qualified as an expert. See La. Code Evid. art. 701 ; State v. Moses, 367 So.2d 800, 805 (La. 1979). The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31, 38 (La. App. 1st Cir. 1984). The fact that the record contains evidence which conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. State v. Quinn, 479 So.2d 592, 596 (La. App. 1st Cir. 1985). Unless there is internal contradiction or irreconcilable conflict with the physical evidence, the testimony of a single witness, if believed by the fact finder, is sufficient to support a factual conclusion. State v. Marshall, 2004-3139 (La. 11/29/06), 943 So.2d 362, 369, cert. denied, 552 U.S. 905, 128 S.Ct. 239, 169 L.Ed.2d 179 (2007). Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. Richardson, 459 So.2d at 38. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a fact finder's determination of guilt. State v. Taylor, 97-2261 (La. App. 1st Cir. 9/25/98), 721 So.2d 929, 932.
After a careful review of the record, including the testimony of Officer Perry and Sergeant Staples and the dash cam video footage, we find that the evidence supports the jury's determination of guilt. The testimony of the officers supports a finding that the defendant was impaired while driving. Additionally, the defendant refused to provide breathalyzer testing and/or a urine sample. While not presumptive evidence, refusal to take a chemical test is relevant evidence in a prosecution for DWI. See La. R.S. 32:666(A)(2)(c) ; State v. Kestle, 2007-1573 (La. 12/2/08), 996 So.2d 275, 281. In reviewing the evidence, we cannot say that the trial court's determination was irrational under the facts and circumstances presented to them. See Ordodi, 946 So.2d at 662. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the trier of fact. State v. Calloway, 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam). A court of appeal impinges on a fact finder's discretion beyond the extent necessary to guarantee *845 the fundamental protection of due process of law in accepting a hypothesis of innocence that was not unreasonably rejected by the fact finder. See State v. Mire, 2014-2295, *4 (La. 1/27/16), --- So.3d ----, ----, 2016 WL 314814 (per curiam). Viewing the evidence in the light most favorable to the prosecution, we are convinced that a rational trier of fact could have concluded that the State proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of the instant DWI offense. Due to the foregoing, the assignments of error lack merit.
CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.

The defendant's status as a fourth or subsequent offender was based on the following predicate convictions: a DWI (first offense) guilty plea on July 7, 2005, a DWI (third offense) guilty plea on August 2, 2011, and a DWI (fourth offense) guilty plea on August 9, 2013.

While it was indicated in the bill of information and questioning by the State at trial that the offense occurred on March 26, 2015, according to the State's exhibits, the police encountered and stopped the defendant after midnight on March 27, 2015.

Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

Sergeant Staples' unit was equipped with a dash camera and the traffic stop and field sobriety testing was captured by the camera and played during the trial. While the defendant's eyes were not visible due to the camera range and lighting, and the officers briefly stood between the defendant and the camera, we find that the captured footage is consistent with the trial testimony.

While the defendant does not appear to be challenging the admissibility of Lieutenant Fontenot's testimony regarding his observance of the defendant's tongue and/or the implication of marijuana use, out of an abundance of caution we note that the defendant did not object to the testimony at trial. Alleged irregularities or errors cannot be availed of on appeal if they are not objected to at the time of the occurrence. See La. Code Crim. P. art. 841 ; State v. Walker, 94-0587 (La. App. 1st Cir. 4/7/95), 654 So.2d 451, 453, writs denied, 95-1124 & 951125 (La. 9/22/95), 660 So.2d 470. We further note that Lieutenant Fontenot was cross-examined as to his qualifications on assessing signs of marijuana use. Moreover, as noted hereafter, the defendant did not object when Lieutenant Fontenot subsequently testified that the defendant admitted to smoking marijuana that night.